(13 App. Div. 24.)

PEOPLE ex rel. HILTON BRIDGE CONSTRUCTION CO. v. ALDRIDGE.

(Supreme Court, Appellate Division, Third Department. January 12, 1897.)

1. MANDAMUS—CONTRACT FOR PUBLIC WORK—PREVIOUS AWARD.
    Mandamus will not lie to compel the acceptance of a bid for public work where the contract has been awarded to another bidder, and such award remains in force. Herrick and Landon, JJ., dissenting.

2. SAME—OPTION TO REJECT BIDS.
    Acceptance of a bid for public work cannot be compelled by mandamus where the notice calling for bids reserved an option to reject any or all bids. Herrick and Landon, JJ., dissenting.

3. SAME—ADEQUATE REMEDY AT LAW.
    The fact that a person injured by the neglect of a public officer to perform his duties has a legal remedy by action against such officer, does not preclude the issuing of a writ of mandamus to the officer at the instance of such person. Per Herrick, J.

Appeal from special term, Albany county.

Application by the Hilton Bridge Construction Company for a peremptory mandamus directing George W. Aldridge, as superintendent of public works, to award to it a certain contract. From an order denying the writ, plaintiff appeals. Affirmed.

## The facts are stated by Mr. Justice HERRICK as follows:

By chapter 170 of the Laws of 1895 the superintendent of public works was authorized to take out and remove the machinery for operating lift bridges over the Erie Canal on Genesee street in the city of Utica, and substitute therefor other motive power and machinery, and alter the lift and permanent bridges theretofore erected. The law provides that: "The furnishing of all materials and the provisions of all work provided for in this act, shall be by contract or contracts to be let to the lowest bidder or bidders giving the security required by the superintendent of public works, except such portions thereof, as in the judgment of the superintendent of public works, and the state engineer cannot be so done to the best interests of the state." Part of the expense of this work was to be borne by the state, and part by the city of Utica. On the 12th day of June, 1896, the superintendent of public works gave public notice that sealed proposals would be received at his office on the 24th day of June, 1896, for the letting of contracts, for furnishing materials, and doing the work required. Such notice provided that: "Every proposal for said work must be accompanied by a draft or a certified check upon some good banking institution of the city of New York or Albany, issued by a national or state bank in good credit within the state, payable at sight to the superintendent of public works, for the amounts expressed below as required to be deposited with the bids for the proposed work. The amount of deposit with bid for the superstructure will be $1,430; the amount of the labor bond required on execution of contract, $4,300; the amount of bond for the faithful performance of contract, on execution of contract, $7,900; the amount of deposit with bid for the substructure will be $920; the amount of labor bond required on execution of contract, $2,800; the amount of bond for faithful performance of contract, on execution of contract, $5,000."

The relator, the Hilton Bridge Construction Company, and the Havana Bridge Works each furnished proposals to do the work, upon blanks apparently furnished by the superintendent of public works. The following is the proposal of the Hilton Bridge Construction Company, the whole of which, so far as the different items of work and material and the prices therefor, is set forth, in order that the form and manner of the proposals may be understood, to wit:

| | | | | This column not to be filled in by bidders. | |
|---|---|---|---|---|---|
| | | Price. | | Amounts. | |
| Quantities. | Items. | Dolls. | Cts. | Dolls. | Cts. |
| | *Substructure.* | | | | |
| 1 | Bailing and draining.................................... ................. | 500 | 00 | | |
| 24 | Oak piles........... ...................................each | 12 | 50 | | |
| 1,500 | Cu. yds. excavation of earth.......................per cu. yard | | 50 | | |
| 610 | " " " masonry............... " " " | 1 | 75 | | |
| 705 | " " masonry....................... " " " | 9 | 25 | | |
| 100 | " " concrete.................................... " " " | 6 | 00 | | |
| | *Superstructure.* | | | | |
| 500 | Lin. ft. old railing taken down and reset.......per lin. foot | | 25 | | |
| 50 | Lin. ft. new railing............................... " " " | 1 | 25 | | |
| 2 | Fixed overhead foot bridges.................................each | 1,200 | 00 | | |
| 1 | Removing old fixed bridge................................. | 750 | 00 | | |
| 1 | New fixed bridge, complete, including pavement.............. | 5,600 | 00 | | |
| 1 | Changing railing posts on lift bridges......................... . | 125 | 00 | | |
| 1 | Moving and resetting lift bridges and all machinery including counterweights, and all pipes and valve connections............................................. ...................... | 4,000 | 00 | | |
| 1 | Knowles' No. 2 pump with pipes, valves, and fittings, erected ready for use.............................. ................ | 175 | 00 | | |
| 1 | Reservoir for air and appliances for gates...................... | 50 | 00 | | |
| 1 | Tell-tale.......... .............. ...................... | 25 | 00 | | |
| | Steel cover for protecting pipes................per pound | | 05 | | |

The controversy arises in this case over the items, 24 old piles, or oak piles, and 2 fixed overhead foot bridges. It will be observed that in the proposal of the Hilton Bridge Construction Company it reads, 24 oak piles, each $12.50; 2 fixed overhead foot bridges, each $1,200. In the proposal of the Havana Bridge Works, it reads, 20 old piles, $20; 2 fixed overhead foot bridges, $939.40. No point was made by either party upon the difference in the bids in the matter of piles, one being named "oak" and the other "old" piles. No one seems to have been misled. If the proposal of the Havana Bridge Works is to be construed as meaning $20 for each of the 24 old piles, and $939.40 for each overhead foot bridge, then the proposal of the Havana Bridge Works is the highest; if the bid is to be construed as $20 for all of the 24 old piles, and $939.40 for both of the overhead foot bridges, then the Havana Bridge Works is the lowest bidder. The superintendent of public works awarded the contract to the Havana Bridge Works. The Hilton Bridge Construction Company thereafter, upon a petition, procured an order to show cause at a special term of the supreme court why a writ of peremptory mandamus should not issue against the superintendent of public works directing him to let to and enter into a contract with the relator for the doing of the work and furnishing the materials in question; the petition of the relator claiming that it was the lowest bidder therefor, and that it had furnished with its proposals a certified check as required by said notice.

Upon the return of the order to show cause, an affidavit of a clerk in the office of the superintendent of public works was produced in behalf of the defendant, and a hearing was had upon the petition of the relator and upon such affidavit. In the affidavit of the clerk, he sets forth that said proposals or bids were opened during the absence of the superintendent of public works, and in the bid written on the blank proposal the Hilton Bridge Construction Company had written over the word "old" the word "oak," so as to read "oak piles," and on the same line thereof, in the column marked "items," had written the word "each," from which it would appear that the word "each" was not in the blank proposals. He further states: That he examined the bid of the Havana Bridge Works with reference to such items, and found that it read, "twenty-four old piles, $20." That deponent thereupon caused said bids to be computed upon the basis, for the Havana Bridge Works, of $20 for each pile, and $939.40 for each overhead foot bridge. That the bids were thereafter submitted to the state engineer and surveyor, and that it was determined by him and by the superintendent of public works to telegraph to the Havana Bridge Works, in order to ascertain from them their understanding of said blank proposals, and what was intended by said Havana Bridge Works by their said bid. Accordingly a telegram was sent reading as follows:

"Albany, N. Y., July 14, 1896.

"To Havana Bridge Works, Montour Falls, N. Y.: In your proposition on Genesee Street bridges, Utica, is the figure for old piles twenty dollars each or for the lot; also is the figure for fixed overhead foot bridges $939.40 each, or for the two?     George W. Aldridge,

"Superintendent of Public Works."

That in response to said telegram, the following dispatch was received:

"July 15, 1896.

"Hon. George W. Aldridge, Superintendent of Public Works, Albany, N. Y.: Prices named in your telegram are totals for entire items.

"Havana Bridge Works."

Subsequently a letter was received from the Havana Bridge Works confirming their telegram, and asserting that the item of $20 was for the lot of 24 old piles, and the item of $939.40 was for both of the overhead foot bridges.

The affiant also asserts that his computation of said bid on the basis of $20 for each old pile and $939.40 for each overhead foot bridge was without the authority of the superintendent of public works.

The special term denied the application for a mandamus, and in the order denying the motion it is stated that it is denied "as matter of law, not of discretion."

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Norton Chase, for appellant.

Theodore E. Hancock, Atty. Gen. (G. D. B. Hasbrouck, of counsel), for respondent.

MERWIN, J.   I am of the opinion that the order should be af-firmed.   The papers show that the contract has been awarded to the Havana Bridge Works.   The question whether this was prop-erly done should not be determined in a proceeding to which the Havana company is not a party, and has no opportunity of being heard.   An award having been made, and still remaining, a writ of mandamus should not be issued to compel an award to another. It is not clear that the bid of the Havana company, as originally made, was not sufficiently definite to call for the interpretation which was finally put upon it, and made it the lower bid.   Assuming, how-ever, that the bid of the Havana company should have been rejected as too indefinite, it does not follow as matter of law that the re-lator was entitled to have his bid accepted.   The most that the re-lator would be entitled to, in case the proceeding was appropriate for that purpose, would be to have the bid of the Havana company set aside, and then to require the state officers either to accept its bid or advertise anew.   The state officers had, under the notice, an option to reject any or all bids.   With this option outstanding, and which the state officers, in the interest of the state, would have the right, and the duty in a proper case, to exercise in case the bid of the relator was the only definite one, it cannot be said that the re-lator had a legal right to the contract.   The basis of a mandamus is a legal right to have something done.   The relator asks that the state officers be compelled to enter into a contract with it.   It does not show a legal right to such contract, and therefore the motion was properly denied.

Order affirmed, with $10 costs and disbursements.

PARKER, P. J., and PUTNAM, J., concur.

HERRICK, J. (dissenting).   I am unable to agree with the conclu-sion of the majority in this case.   The granting of the writ of man-damus is largely in the discretion of the court to which the applica-tion is made.   In this case it appears, however, that the special term did not exercise its discretion, but held that, as matter of law, the writ could not issue.   It appears from the opinion of the justice holding the special term that the application was denied upon the ground that the superintendent of public works had discretion in the letting of the contract in question, and discretion to exercise in de-termining who was the lowest bidder; and that, under repeated ad-judications in this state, a mandamus will not lie to compel the per-formance of a discretionary act in a particular manner; and that, therefore, the court had no power to grant the application of the relator.   It thus becomes necessary for us to determine whether, upon the facts presented here, there was power and authority in the court to grant the application of the relator.   And in doing

so we are not to confine ourselves to the reason given by the special term. If for any other reason we come to the conclusion the court had no power to issue the writ, the order should be affirmed, although the particular reason given by the special term should be erroneous. "There is no dispute as to the rule of law that a mandamus against a public officer or a municipality is a proper remedy to compel the performance of a ministerial duty plainly prescribed; and it may be invoked in behalf of any party interested in its performance, on the failure of the officer or public body to do the act or thing required." People v. Maher, 141 N. Y. 330–336, 36 N. E. 397. While, as the court says, it is a proper remedy to compel the performance of a public duty, it is not one that will be given by the court whenever a public officer fails or refuses to perform his duty. "When the law requires a public officer to do a specified act in a specified way upon a conceded state of facts, without regard to his own judgment as to the propriety of the act, and with no power to exercise his discretion, the duty is ministerial in character, and performance may be compelled by mandamus, if there is no other adequate remedy. Where, however, the law requires a judicial determination to be made, such as the decision of a question of fact, or the exercise of judgment in deciding whether the act should be done or not, the duty is regarded as judicial, and mandamus will not lie to compel performance." People v. Commissioners of Land Office, 149 N. Y. 26, 43 N. E. 419.

Let us, then, first determine whether the power and authority vested in the superintendent of public works in this matter was a discretionary one. When applied to public officers, discretion means a power or right conferred upon them by law of acting officially, in certain circumstances, according to the dictates of their own judgment and conscience, uncontrolled by the judgment or conscience of others. 5 Am. & Eng. Enc. Law, 681. Under the law pursuant to which the contract in question was to be let, nothing was left to the discretion of the official letting the contract, except that in the first instance the superintendent of public works and the state engineer were to determine what, if any, portion thereof cannot be done by contract for the best interests of the state, and, that being determined, I think it is mandatory that the contracts to be let, when let, shall be let to the lowest bidders. The insertion in the constitution and in the statutes providing for the doing of public work of the requirement that contracts therefor shall be let to the lowest bidder, is for the express purpose of excluding the exercise of official discretion, and preventing public officials from acting according to their own judgment and conscience; to prevent their exposure to importunities and temptations; and to prevent, as far as possible, the favoritism, extravagance, and corruption that has too frequently resulted from the absence of such provisions of law, or of their nonobservance, and when public contracts have been let entirely at the discretion of the contracting officer. The laws designed to prevent these evils should, as far as possible, be so construed as to give force and effect to their purpose and intent, and so construing the law,

I think the requirement that the contract or contracts should be let to the lowest bidder or bidders was mandatory, and not discretionary. Neither do I think the determination of who is the lowest bidder is a matter of discretion. The work here to be done is changing the machinery for operating lift bridges, and changing the lifting and fixed bridges and the erection of two foot bridges over the Erie Canal. The work is to be done under the supervision of, and contracts therefor let by, the official having charge of the canals of the state.

This appeal was argued upon both sides upon the assumption that the laws regulating the letting of canal contracts regulate the letting of the contract in this case, and I assume, therefore, that the superintendent of public works is to discharge his duties in relation thereto in the same manner that the general law in relation to the canals provides that he shall discharge like duties. And he has apparently so understood his duty in the premises, for he has undertaken to discharge it in the manner provided by the canal law.

Section 130 of chapter 338 of the Laws of 1894, known as the "Canal Law," provides that:

"No work shall be contracted for upon any of the canals, until the division engineers ascertain with all practicable accuracy, the quantity of embankment, excavation, masonry, the quantity and quality of all materials to be used, and all other items of work to be placed under contract, and a statement thereof, with the maps, places, and specifications corresponding to those adopted by the canal board, and on file in the office of the state engineer, is publicly exhibited to every person proposing or desiring to make a proposal for such work. The quantities contained in such statement shall be used in determining the cost of the work, according to the different proposals received," etc.

Section 144 provides that:

"No money shall be advanced or paid to any contractor on his contract except on the sworn certificate of an engineer in such form as the comptroller prescribes, that he has actually measured the work or material included in the certificate, and believes that the quantities therein stated do not exceed the amounts actually performed or delivered by the contractor."

These two sections make it very clear to my mind that it was the intention of the legislature to prevent, as far as possible, what has been denominated "unbalanced bidding," and require detailed or itemized bids, the amount of which can be determined at the time of letting the contract by the simple process of multiplying and adding, and the amount due thereon determined by the comptroller by multiplying the units of quantitites of work done or materials furnished by the price bid for each such unit of quantity of work done or materials furnished; otherwise there is no point whatever to section 144. When the unbalanced bid was permissible, it is possible that it required the exercise of judgment or discretion to determine who was the lowest bidder; but when a bid is required upon each item and quantity, and those items and quantities are specified, it is then a question of mathematics, and there then is no room for the exercise of discretion.

The cases of People v. Contracting Board, 33 N. Y. 382, People v. Contracting Board, 27 N. Y. 378, and People v. Campbell, 72 N. Y. 496, were all cases arising under the former laws, when there was no statutory requirement that the bids should be made upon detailed

statements of the quantities and items of the work to be done; and the enactment of the present law was for the very purpose of preventing the exercise of that discretion, which, under former laws, the courts held existed, and under which great abuses had been perpetrated in the letting of public contracts, the history of which is too familiar to need recounting now.

In the case of People v. Rice, 129 N. Y. 461, 29 N. E. 358, the court held that the office and duties of the board of state canvassers were purely ministerial. It being the duty of the board under the law, upon the certified copies of the statements made by the board of county canvassers, to proceed to make a statement of the whole number of votes cast at the last election for the various officers, and upon the statement so made determine and declare what persons have been by the greatest number of votes elected to such offices.

"The members convene, under the statute, to determine upon the statements, which they must make from the statements returned by the boards of county canvassers, what persons have been by the greatest number of votes elected to office. They are not, in any general sense, to determine. They must determine upon such statements as they have made up in an arithmetical manner from the various official returns before them." Page 466, 129 N. Y., and page 360, 29 N. E.

The process described in the last-cited case, like the process for determining who is the lowest bidder, is entirely an arithmetical one, and a determination by such a process is not a judicial or discretionary determination, but purely a ministerial act. Here the requirements are that the contract shall be let to the lowest bidder or bidders furnishing the security required by the superintendent of public works. The law also provides that:

"Every proposal for a contract, for which written proposals are to be received, shall be sealed, and shall be for a sum certain as to the price to be paid or received, and no proposition not thus definite and certain, or which contains any alternative condition or limitation as to such price, shall be received or acted upon." Section 132, c. 338, Laws 1894.

The superintendent could exercise his judgment in determining whether the security furnished in response to his notice to contractors was adequate, and could reject bids as indefinite and uncertain. Neither of these matters enter into the determination of who is the lowest bidder, but relate to who in fact are legal bidders; whose bids are to be considered at all. But, the proper security being furnished, and the bids being in proper legal form, and it being then determined who are legal bidders, it then becomes with him a mere matter of arithmetical computation, a process of multiplication and addition, in which there is no room for the exercise of judgment; for twice 5 is 10, and no exercise of discretion can make it 9 or 11; 2 and 2 make 4, and no exercise of discretion can make them either more or less. It seems to me, therefore, that the duty of the superintendent of public works in the matter of determining who is the lowest bidder is not discretionary, but ministerial. Hence the contention that the court has no power to grant the remedy asked for by the relator, because the duty of the superintendent, in determining who was the lowest bidder, was a matter of discretion, cannot be upheld.

It is contended, however, that the order of the special term should be affirmed, because the relator has an adequate remedy at law. The remedy by mandamus is of an exceptional character, and the writ issues only in that class of cases where a clear legal right is made to appear, and there is no other adequate and legal means to obtain it. People v. Board of Police, 107 N. Y. 235, 13 N. E. 920. In People v. Crennan, 141 N. Y. 239, 36 N. E. 187, where an application was made for a mandamus to compel a justice of the peace to pay over fines collected by him which were by the statute to be paid to the board of commissioners of fisheries, it was held that mandamus would not lie, because the same statute provided a remedy by a civil action for the recovery of such fines from the officer receiving them. There are cases holding that, where an action for damages can be maintained for a failure to perform the act, the doing of which is sought to be enforced, mandamus will not lie; and for the purpose of this case I assume that to be the general rule, and it therefore becomes necessary to determine whether the relator has such an adequate remedy at law. Can the relator maintain an action against the state for the failure of the superintendent of public works to award him the contract? The mere fact that he is a state officer does not make the state responsible in a civil action for his actions, or for his omissions to act. The state is not responsible in law for the acts of its officers and servants, except when by the act of the legislature it has voluntarily assumed such responsibility. Lewis v. State, 96 N. Y. 71; Sipple v. State, 99 N. Y. 284, 1 N. E. 892, and 3 N. E. 657; Locke v. State, 140 N. Y. 480, 35 N. E. 1076. The state has voluntarily consented to be responsible for certain classes of claims, and a tribunal has been created by the state for the determination of such claims; but the character of those claims is limited entirely to claims arising from the use or management of the canals, and as to every other claim the state is still exempted from liability in any judicial tribunal. Rexford v. State, 105 N. Y. 229, 11 N. E. 514; Locke v. State, 140 N. Y. 480, 35 N. E. 1076. In the latter case it was held that the jurisdiction of the board of claims under the act of 1883 is the same as that conferred upon the canal appraisers by the act of 1870, and unless the state thereby consents to be sued or held liable, that then the court of claims has no jurisdiction. The jurisdiction of the canal appraisers to hear claims against the state was conferred by chapter 321 of the Laws of 1870, in the following words:

"To hear and determine all claims against the state of any and all persons and corporations for damages alleged to have been sustained by them from the canals of the state, or from their use and management, or resulting or arising from the negligence or conduct of any officer of the state having charge thereof, or resulting or arising from any accident or other matter or thing connected with the canals."

In the last clause of the section it is provided:

"That the provisions of this act shall not extend to claims arising from damages resulting from the navigation of the canals."

It is apparent that the language, "or resulting or arising from the negligence or conduct of any officer of the state having charge thereof," means his conduct in matters appertaining to the canals, and not

that the state is liable for any other act of negligence or misconduct of the canal official when he is discharging other duties, or performing acts outside of the management of the canals, and when he is engaged in other than his official employment as such canal officer. The state, by this act, does not become responsible for the acts of all canal officials simply because they are canal officials, any more than it becomes responsible for every accident that occurs in the navigation of the canals. The responsibility of the state will not be extended beyond the strict reading of the statute by which it consented to become responsible, as was held in the case of Locke v. State. In that case it was sought to recover for injuries sustained by a boatman by reason of the alleged negligence of the agents or servants of the state who had charge of a lift bridge, and who it was alleged carelessly lowered the bridge so it scraped along the top of the boat, and caught the deceased between the bridge and the cabin of the boat; and it was held that the state was not responsible under the act conferring jurisdiction upon the board of claims, because the man who managed the locks and bridges in order to permit the passage of the boats upon the canals is engaged in navigating the canals within the meaning of the statute, in the same sense as the man who controls the power by means of which the boats are propelled is navigating the canals. In this case there is no liability upon the part of the state. The act of the superintendent of canals was not done in the management of the canals, or in their use. The construction of the bridge was in no sense a part of the canal system, for the benefit of the canals, but it was for the accommodation of the people of Utica. Neither can the city of Utica be held responsible, for, although the work was for its benefit, the conduct of such work had been placed by the state authorities under the control of a state officer, over whom the city of Utica had no control, and in whose selection it had no voice, and for whose acts, therefore, it cannot be held responsible.

There is, however, a right of action against the officer who does the wrong complained of. Where an individual suffers an injury by the misfeasance or nonfeasance of a public officer, who acts contrary to, or omits to act in accordance with, his duty, an action will lie against such officer in behalf of the party injured. Bryant v. Town of Randolph, 133 N. Y. 70, 30 N. E. 657. But the fact that the relator has a right of action against the superintendent of public works does not, as matter of law, prevent the court from issuing the writ asked for. The general rule that a mandamus will not lie where the party has a legal remedy by action has this limitation: that an action against a public officer or corporation for a neglect to perform his or its duty will not be held to be such a remedy by action as will prevent the allowance of a mandamus. People v. Hawkins, 46 N. Y. 9; People v. Head, 24 N. Y. 114; People v. Supervisors of Chenango Co., 11 N. Y. 563; People v. Taylor, 1 Abb. Prac. (N. S.) 200; Buck v. City of Lockport, 6 Lans. 251; McCullough v. Mayor, etc. of Brooklyn, 23 Wend. 458; People v. Green, 58 N. Y. 295–305. And assuming that I am wrong in my conclusion that the relator would have no action

against the state, and that this matter is sufficiently connected with the canals to bring it within chapter 321 of the Laws of 1870, still, upon the principles of the last-cited cases, it would not be such an adequate remedy by action as to prevent the allowance of a mandamus.

The next thing for consideration is, has the relator a clear legal right to the contract in question? This question so involves a consideration of the merits which the court below did not consider that it is with some hesitation I discuss it at all. It perhaps, however, is not improper to consider it to at least some extent. It has been held that where the relator was the lowest bidder for the contract, and furnished the requisite security, he was clearly entitled to the contract, and that a writ of mandamus was the proper remedy. People v. Contracting Board, 46 Barb. 254. In this case no serious question is raised as to the relator not having furnished adequate security. It is true that the affidavit of the clerk, which was read upon the application, sets forth that "the certified check stated in the affidavit accompanied the order to show cause to have been filed by the Hilton Bridge Construction Company was not the security called for by the superintendent of public works in said notice to contractors." The opinion of the clerk as to whether it was or was not such security is of no particular consequence. The superintendent of public works himself might determine and pass upon the question as to whether it was adequate, but no subordinate in his office can do so. Nor has the opinion of any such subordinate any place in the consideration of this question; and in this connection I may also say that those portions of the affidavit containing statements as to the understanding of the superintendent of public works, and as to what the superintendent told the affiant of his intentions, can have no weight in the consideration of this matter. If the understanding or intention of such superintendent is material, he must speak for himself. The notice of the superintendent calls for a "draft or certified check upon some banking institution in the city of New York or Albany, issued by a national or state bank in good credit within the state, payable at sight to the superintendent of public works. The amount of deposit with bid for the superstructure will be $1,430; the amount of deposit with bid for the substructure will be $920." It does not state whether these amounts shall be in separate checks, or whether they shall both be included in one check. The petitioner, in his petition, sets forth that he accompanied his proposal "by a certified check upon a good banking institution in the city of Albany, issued by a national bank in good credit within the state, to wit, the National Commercial Bank, payable at sight to the superintendent of public works, for the amounts expressed in said notice, as required to be deposited with bid for the superstructure and for the substructure, to wit, in the sum of $2,300." This allegation of the petitioner is not denied, and I think shows that he furnished the security required by the superintendent of public works. The only question that could be raised upon this would be as to whether the National Commercial Bank is a good banking institution, and of

good credit within this state; and as to that I think the court will take judicial notice of the fact that an institution upon which for a number of years the checks of the state have been drawn to pay the official salaries of the members of the court is one of the state depositories, and will therefore be presumed to be a good banking institution, and of good credit. The bond required to be given is only to be given upon the execution of the contract, and that the relator has not had an opportunity to furnish.

We need not hold that in every case the person offering to perform the contract at the lowest price is, as a matter of absolute right, entitled to the contract. Possibly there may be sufficient reason why his bid should not be considered at all, but rejected either singly or with all others received at that time. But it seems to me that when a contract is in fact let upon proposals, the persons making the lowest proposals of those received and considered, and who has in other respects complied with the law, is entitled to the contract; otherwise the public invitation to bid is an idle farce.

In the case of People v. Contracting Board, 27 N. Y. 378, one of the reasons for the court's refusing a mandamus was that the contract had been awarded to another person, and he was then engaged in doing the work. That case also arose under the law where there was discretion vested in the contracting board as to the awarding of the contract, which, as we have seen, does not apply here. It is stated upon the part of the defendant in this matter that the contract in question here had been awarded to another person than the relator, but it does not appear that any contract has been entered into, or that work is being done under it, as in the case last before cited. If the contract has been awarded to any person who is not the lowest bidder, such action would be void, and afford no defense to this proceeding.

In the case of People v. Contracting Board, 33 N. Y. 382, the proposals of the relator had been rejected as deceptive and fraudulent, and upon his making application for a mandamus upon the ground that he was the lowest bidder the court refused to grant it, holding, in substance, that there was discretion in the contracting board to decline proposals that were excessive and disadvantageous to the state, and that the only restriction upon the board was that when they contracted it should be with the lowest bidder, and that this did not imply that the lowest bidder could invoke the powers of the courts to compel the board to enter into a contract with him.

It would seem to be unnecessary to discuss the question that a deceptive or fraudulent proposal invalidates it, so that its author has no legal standing and his bid no legal status before the contracting board.

In the case of People v. Fay, 3 Lans. 398, it was held that it was practically impossible to literally enforce in all cases that provision of the constitution which provides that all contracts for work or materials upon the canals shall be made with the person who shall offer to do it for the lowest price. In that case those who were the lowest bidders either withdrew their bids or refused to enter into the con-

tracts awarded them. Of course, those who withdrew their bids were no longer bidders for the contract; those who refused to enter into the contract awarded them did not furnish the adequate security which the constitution speaks of; so that neither class came within the description of lowest bidders furnishing adequate security.

The case we have here under consideration has none of the features that appear in any of the cases I have referred to, or in any of the cases referred to in the briefs of counsel. Adequate security has been furnished. There is no claim that the bids were deceptive or fraudulent in their character. They have not been rejected, and it does not appear from the record before us that any other contract has been entered into, or that work is being done in pursuance of any such contract; but it does appear that the proposal of the relator has been considered as a legal, bona fide bid, and the contract has been awarded to the concern competing with it. Under such circumstances it seems to me that, if the relator was in fact the lowest bidder, it became as a matter of right entitled to the contract, and the court had power to issue a mandamus to compel the enforcement of such right.

As to whether the relator was in fact the lowest bidder is a question to be decided from the bids themselves, in deciding which the court must determine whether the bid of the Havana Bridge Works was made out according to law, and was so definite and certain as to enable the contracting officer to understand the exact terms of the bid, and from the items thereof compute the total amount, and, if it was so made out, what such bid was; or whether it was so indefinite and uncertain as to call for its rejection; and that will also involve the determination of whether it was permissible for the superintendent of public works to seek the meaning and intent of the bid in any other way than from the face of the proposal itself. In determining whether the bid was sufficiently definite and certain, the court will necessarily have to take into consideration the fact that the subordinate who seems to have had charge of opening the bids and making the computations considered and computed the disputed items as and at $12.50 for each of the 24 piles, and as and at $959.40 for each of the 2 foot bridges; but that the state engineer and superintendent considered it necessary to communicate with the bidder, and ascertain its meaning and intention in making such bids, and determine whether such apparent difference of opinion is not of itself evidence that the bid was so indefinite and uncertain as to require its rejection under section 132 of chapter 338 of the Laws of 1894, or whether that which appeared so indefinite and uncertain to the contracting officer that he did not understand it, but required an explanation, the court can say upon its face appears to it definite and certain. And in determining the weight to be given to this action of the superintendent in calling for an explanation of the bid as evidence of its uncertainty, it must be assumed that it was an honest effort upon his part to secure the letting of the contract at the lowest price, and that in truth he did not know what the bid really meant; and that

it was not intended, although such might be its practical effect, as an intimation on his part to the bidder that its bid was the lowest, and that, if it desired the contract, it must make its bid, at the prices named by it, for all of such items, and not for each. These are all matters to be taken into consideration by the court in reaching a determination upon the merits, and also, perhaps, in determining the manner in which its discretion should be exercised. The question of power being determined, and the question as to who is the lowest bidder decided in favor of the relator, if it should be, it is still a matter of discretion with the court whether it will order the mandamus to issue. While this court will, upon appeal, review the decision of the court from which the appeal is taken upon the merits, and also the manner in which it has exercised its discretion, but neither the merits of the case nor the manner in which the discretionary power of the court should be exercised will be decided for the first time upon appeal. That must be done by the court to which the application is made in the first instance; and, the special term not having passed upon the merits, nor exercised its discretion, the order appealed from should be reversed, with costs and disbursements of this appeal, and the proceedings remitted to the special term for the exercise of its discretion.

LANDON, J., concurs.