Joseph A. Cox, S.
The Consuls General of the governments in exile of Latvia and Estonia have moved for orders dismissing the objections to the Public Administrator’s accounts and striking the notices of appearance filed by purported attorneys in fact for alleged distributees in the accounting proceedings. The motions are founded upon the alleged invalidity of the powers of attorney. The attorneys in fact on their part have moved to strike the appearances of the Consuls General, alleging that they are not proper parties to these proceedings, by reason of the designation of specified persons as attorneys in fact authorized to appear on behalf of the claimants in these proceedings (Matter of Zalewski, 292 N. Y. 332; Matter of D’Adamo, 212 N. Y. 214). The Attorney-General of the State of New York has joined in the motions to have the powers of attorney declared invalid. Except for the fact that in the Luks case the powers of attorney were executed in Latvia and in the Kask and Tiit cases the powers were executed in Estonia, the fact situations surrounding the execution of the powers and their authentication present like issues.
In each case the powers were executed in the country where the claimants reside and were purportedly acknowledged before a notary in that country whose signature was authenticated by an official of the Notarial Department of the Soviet Latvian or Soviet Estonian Supreme Court, as the case might be. The authority of the authenticating official was in turn certified by an official of the Consular Administration of the Ministry of Foreign Affairs of the Union of Soviet Socialist Republics whose signature was attested to by the Consul of the United States in Moscow. Each certification of the United States Consul contained a provision that the certification was not to be interpreted as implying a recognition of Soviet sovereignty in the occupied country. In addition to the foregoing documents, certificates of conformity have been filed which certify that the powers of attorney conformed to and were executed, acknowledged and authenticated in accordance with the laws of the Union of Soviet Socialist Republics and which attest to the correctness of the translations of the texts of the powers from *74 the Russian into the English language. These certificates of conformity are signed by the Third Secretary of the Embassy of the Union of Soviet Socialist Republics at Washington, D. C., who is also the Deputy Chief of the Consular Division of the Embassy of the Union of Soviet Socialist Republics.
The Government of the United States has never recognized the forceful occupation of Estonia and Latvia by the Union of Soviet Socialist Republics nor does it recognize the absorption and incorporation of Latvia and Estonia into the Union of Soviet Socialist Republics. The legality of the acts, laws and decrees of the puppet regimes set up in these countries by the Union of Soviet Socialist Republics is not recognized by the United States, diplomatic or consular officers are not maintained in either Estonia or Latvia, and full recognition is given to the legations of Estonia and Latvia established and maintained here by the governments in exile of those countries.
The attorneys in fact contend that the decision of the Appellate Division in Matter of Luberg (19 A D 2d 370) is controlling here, but this court can find no support for that contention in its interpretation of that decision. The powers of attorney found valid in the Luberg case were executed and authenticated in Leningrad, within the recognized geographic limits of the Union of Soviet Socialist Republics, and the Appellate Division, in finding such powers valid, followed those cases which held that we must recognize powers executed in countries whose governments are recognized by this country (Matter of Braunstein, 202 Misc. 244; The Denny, 127 F. 2d 404). That the Appellate Division in Matter of Luberg (supra) did not intend to pass upon the issues here presented is clearly borne out by the following statement which appears therein (p. 373): ‘ ‘ Whether the fact the law certified to is the law of the de facto government nullifies the instrument, we are not called upon to pass on, and decision on that point would be of no effect in the determination to be reached.” The Appellate Division did not pass upon the question of the validity of documents executed before and authenticated by officials of an unrecognized government because the question was not before it, but the court’s comments might seem to cast doubt on the continued validity of prior rulings which refused to recognize such documents (Matter of Braunstein, supra; Matter of Adler, 197 Misc. 104; Matter of Mitzkel, 36 Misc 2d 671). Explicitly characterizing its comments as dicta, the court stated that denial of recognition of the acts of a de facto government is to be limited to acts which are political in character (Russian Reinsurance Co. v. Stoddard, 240 N. Y. 149) and also referred *75 to the difficulties inherent in a denial of recognition to birth, marriage and death certificates which are authenticated by officials of unrecognized puppet regimes.
The problems here presented arise from the facts that a powerful aggressor nation overwhelmed its small neighboring nations, ousted their chosen governments and installed instead puppet governments not responsive to the needs or wants of the citizens of those nations. The policy of our Government has been to refuse recognition to such acts of aggression. Questions of recognition of governments lie exclusively within the realm of the executive branch of our Government and our courts can give no effect to an act of an unrecognized government which either by implication or otherwise would indicate recognition of that government (Matter of Adler, supra; Latvian State Cargo & Passenger S. S. Line v. Clark, 80 F. Supp. 683; Guaranty Trust Co. v. United States, 304 U. S. 126; United States v. Pink, 315 U. S. 203).
The complexity and difficulty of the problems presented by diplomatic nonrecognition were recognized as far back as 1823 when Lord Eldon in the case of Jones v. Garcia Del Rio (Turn. & Rus. 297, 299, 37 Eng. Rep. 1113, 1114) wrote: “ What right have I, as the King’s Judge, to interfere upon the subject of a contract with a country which he does not recognize ? ” Our courts have adhered to this rule of law (Matter of Adler, supra; Matter of Braunstein, supra; Matter of Mitskel, supra), where the fact situations considered were almost identical with the cases under consideration. Here as in the last-cited cases the powers of attorney were executed in a country whose government is not recognized by the United States Government and the documents were acknowledged before a notary whose signature was authenticated by an official whose acts in that country are not recognized by us. This court has found no reported case which recognized and accepted as valid documents authenticated by officials of an unrecognized puppet government except the case of Matter of Werenjchik v. Ulen Contr. Corp. (229 App. Div. 36). In that ease the court accepted as valid a birth certificate authenticated by unrecognized Soviet officials but the Court of Appeals rested its affirmance of that case on other proof and avoided the ‘1 troublesome ” question of whether it could take “ judicial notice ” of an unrecognized government (Matter of Werenjchik v. Ulen Contr. Corp., 255 N. Y. 56).
Under the provisions of section 32-a of the Personal Property Law the Surrogate is vested with the power to inquire into and determine the validity of powers of attorney. The *76 section provides: “Every power of attorney relating to an interest in a decedent’s estate and every conveyance and assignment of an interest in an estate and every other similar instrument containing an expressed or ‘ implied authorization or delegation of power to act thereunder shall be in writing and shall be acknowledged or proved in the manner required to entitle conveyances of real property to be recorded.” Section 301-a of the Real Property Law reads in part: ‘ ‘ The acknowledgment or proof, if taken in the manner prescribed by laws of such foreign country, must be accompanied by a certificate to the effect that it conforms with such laws.” In the cases at bar the certificates of conformity were issued by a consular official of the Union of Soviet Socialist Republics who certified that the said powers were executed in accordance with the laws of the Union of Soviet Socialist Republics. This country does not recognize the law of the Union of Soviet Socialist Republics in Latvia and Estonia and, for such reason, the certificates of conformity are defective. As the powers were executed in Latvia and Estonia the certificates of conformity must show that they were executed in accordance with the laws of Latvia and Estonia as independent governments.
The acknowledgment of the alleged claimants’ signatures by the notaries and the authentications of the notaries’ signatures by the Notarial Department of the Soviet Estonian and Soviet Latvian Supreme Courts were acts performed by officials whose presence in and dominion over those countries is not recognized by the United States Government. As such they are invalid from their inception and such invalid acts cannot be validated by the acts of the Soviet officials in Moscow who certified as to the authority of their officials in Estonia and Latvia.
Despite the dicta found in Matter of Luberg and the fears expressed therein as to the difficulty which may be encountered with respect to proof of facts of vital statistics, this court is of the opinion that prior rulings with respect to documents executed and authenticated in the manner of the documents here before us must be adhered to. The powers of attorney filed in these matters are not entitled to recognition and the motions to dismiss the objections and the notices of appearance filed by the attorneys in fact designated in such powers are granted. The cross motions to strike the appearances of the Consuls General are denied. The claimants in the above-entitled matters are citizens of Latvia and Estonia and the Consuls General of those countries are by treaty vested with power to represent their nationals.