Samuel J. Silverman, S.
This is a motion by the Consul General of Lithuania to -strike certain powers of attorney executed by legatees residing in Lithuania and the notice- of appearance of the firm of Wolf, Popper, Ross, Wolf & Jones as attorneys, pursuant to the power of attorney. The Wolf, Popper firm *192 in their opposing affidavit requests that the Lithuanian Consul he barred from further participation in the proceeding.
I.
WHETHER THE POWERS OE ATTORNEY ARE VALID ON THEIR EACE
The major issue is the validity of the powers of attorney and specifically the acknowledgment or proof of the execution thereof. The problem arises out of the fact that, although the former territory of the Republic of Lithuania has been occupied by and incorporated into and is now governed by the Union of Soviet Socialist Republics as part of the USSR, the United States Government does not recognize the incorporation of this territory by the USSR and continues to recognize the Consul General of Lithuania, presumably pursuant to a designation by the Lithuanian government in exile. The powers of attorney were executed and acknowledged in the former territory of Lithuania before a notary of the Lithuanian SSR (presumably a constituent republic of USSR). The authority of the notary has been authenticated by a member of the Supreme Court of the Lithuanian SSR, whose signature, in turn was certified by an officer of the Ministry of Foreign Affairs of the USSR, whose signature, in turn, was certified by the Consul of the United States in Leningrad which, however, contains the proviso: ‘ ‘ This authentication is not to be interpreted as implying recognition of Soviet sovereignty over Lithuania.”
Prior to the decision of the Appellate Division, First Department, in Matter of Luberg (19 A D 2d 370 [1963]), a dictum in which indicated the validity of such powers of attorney and acknowledgments, a line of decisions had held such powers of attorney and acknowledgments invalid on their face. Following the Luberg decision, Surrogate Cox held in Matter of Luks (45 Misc 2d 72 [1965]) and Matter of Jurkevics (N. Y. L. J., June 1, 1965, p. 18, col. 4) that such powers of attorney and acknowledgments were still invalid on their face. With great respect, I am unable to agree with the latter decisions and I here state my reasons:
Former section 32-a of the Personal Property Law (now EPTL 13-2.3) requires powers of attorney relating to an interest in a decedent’s estate to be acknowledged or proved in the manner prescribed by the laws of this State for the recording of a conveyance of real property. Section 301 of the Real Property Law requires that the acknowledgment of such a conveyance ‘ ‘ may be made in foreign countries before any of the following *193 officers acting within his territorial jurisdiction * * * 4. A notary public.”
In this case, in view of the nonrecognition by the United States of the Soviet incorporation of Lithuania, the moving party’s position is that the notary in Lithuania (and all the other certifying Soviet officials) are not “ officers acting within his territorial jurisdiction (Real Property Law, § 301.)
The problem here presented is thus an aspect of the recurring problem of the effect on the rights of parties before our courts of the existence in certain territories of the world of de facto governments which our Government does not recognize as de jure.
Basic principles in this area of the law were stated by Judge Cardozo in Sokoloff v. National City Bank (239 N. Y. 158 [1924]) and Judge Lehman in Russian Reinsurance Co. v. Stoddard, 240 N. Y. 149 [1925]).
In the Sokoloff case, Judge Cardozo said (p. 165): “Juridically, a government that is unrecognized may be viewed as no government at all, if the power withholding recognition chooses thus to view it. In practice, however, since juridical conceptions are seldom, if ever, carried to the limit of their logic, the equivalence is not absolute, but is subject to self-imposed limitations of common sense and fairness.”
In the Russian Reinsurance case, Judge Lehman said (p. 158): “ The fall of one governmental establishment and the substitution of another governmental establishment which actually governs ; which is able to enforce its claims by military force and is obeyed by the people over whom it rules, must profoundly affect all the acts and duties, all the relations of those who live within the territory, over which the new establishment exercises rule. Its rule may be without lawful foundation; but lawful or unlawful, its existence is a fact and that fact cannot be destroyed by juridical concepts. The State Department determines whether it will recognize its existence as lawful, and until the State Department has recognized the new establishment, the court may not pass upon its legitimacy or ascribe to its decrees all the effect which inheres in the laws or orders of a sovereign. The State Department determines only that question. It cannot determine how far the private rights and obligations of individuals are affected by acts of a body not sovereign or with which our government will have no dealings. That question does not concern our foreign relations. It is not a political question, but a judicial question. The courts in considering that question assume as a premise that until recognition these acts are not in full sense *194 law. Their conclusion must depend upon whether these have nevertheless had such an actual effect that they may not be disregarded. In such case we deal with result rather than canse. We do not pass upon what such an unrecognized governmental authority may do, or upon the right or wrong of what it has done; we consider the effect upon others of that which has been done, primarily from the point of view of fact rather than of theory.”
The Appellate Division, First Department, has recently had occasion to consider these principles in connection with the precise question of powers of attorney executed by residents of occupied Baltic republics. In Matter of Luberg (19 A D 2d 370, 372 [1963], Judge Stetjeb, said: “ It is not every act of an official of an unrecognized government that is regarded as a nullity. The competence of the courts to give effect to such acts is only limited where the acts are political in character '(Russian Reinsurance Co. v. Stoddard, 240 N. Y. 149). If this were not so, many situations would become intolerable. It would be impossible to establish the elementary facts of birth, marriage, death or the like where the certification of the same was made by, or the official before whom proof was to be taken was an appointee of, the unrecognized regime. Moreover, we would perforce have to refuse nationals of the regime that we do recognize access to our shores because the only persons who could in fact authenticate their passports would -be officials of the regime that is not recognized. In that way we would be acting in a manner that was in practical effect more oppressive to those nationals whose independence we are seeking to further than is the government which usurped authority over them. We conclude that because the power was authenticated by an official of the de facto rather than the de jure government does not have the effect of requiring the court to disregard it.”
In Matter of Luks (45 Misc 2d 72, 74 [1965]) Judge Cox properly characterized this statement as dictum. He held the power of attorney before him invalid because: (a) Whereas in the Luberg case the one power of attorney on which the court actually passed .(one of two that had been executed), though executed by an Estonian resident, was in fact executed in Leningrad, a portion of the USSR as to which the United States of course recognizes the jurisdiction of the government of the USSR as the de jure government. In the Luks case, on the other hand, the power of attorney involved was executed in Estonian territory as to which the United States Government does not recognize the USSR as the de jure government, (b) In the Luks case, the certificate of the Soviet officials pursuant to *195 section 301-a of the Real Property Law was that the power of attorney had been executed in accordance with the laws of the USSR, which, in accordance with the decision of our State Department, are not the de jure laws of the occupied territory where the power of attorney had been executed, while in the Luberg case the laws of the USSR are the de jure law of Leningrad where the particular power of attorney on which the court was passing was executed.
I think I should follow the dictum of the Appellate Division in the Luberg case as to the authority of the notary. We are concerned here not with the rights of the USSR but with “ private rights and obligations of individuals,” “ not a political question, but a judicial question.” (Russian Reinsurance Co. v. Stoddard, supra, p. 158.) Acknowledgment is only a subsidiary evidentiary requirement. It is merely a convenient method of proving that the instrument was in fact validly executed; and the question here is merely one of appropriate evidence of the signature to a power of attorney by individuals who concededly have the right to execute such powers of attorney. If such powers were executed by these same individuals in territory of the USSR, where the USSR is the de jure government, we would recognize the powers of attorney. Matter of Luberg (supra). There is neither more nor less reason to believe that these powers of attorney were in fact signed by the individuals concerned than if they had been executed in other parts of the Soviet Union. And there is no useful purpose to be served in requiring these individuals to travel some distance (at an expense probably disproportionate to their interest in this estate) in order to be able to execute a power of attorney in a territory that is under the de jure jurisdiction of the USSR.
Accordingly I hold, in accordance with the dictum in Matter of Luberg (19 A D 2d 370, 372, supra) “ that because the power was authenticated by an official of the de facto rather than the de jure government does not have the effect of requiring the court to disregard it.”
As I have said, the -court in the Luhs case further distinguished the Luberg case because the certification was that the acknowledgment or proof conformed with the laws of the USSR, the court holding that such a certification was not the certification required by section 301-a of the Real Property Law that the acknowledgment had been ‘1 taken in the manner prescribed either by the laws of the State of New York or by the laws of the country where the acknowledgment or proof is taken.” (45 Misc 2d 72, 76.)
*196 In the case at bar, the parties have attempted to avoid this problem by having the acknowledgment taken in the New York form. However, in Matter of Jurkevics (N. Y. L. J., June 1, 1965, p. 18, col. 4), Judge Cox held that this did not save the powers of attorney. He said: “ The decision of this court in Matter of Lulcs (45 Misc 2d 72) is conclusive of the question here presented. Here as in that case the powers were executed, acknowledged and authenticated before and by officials whose presence in and dominion over the countries of Lithuania and Latvia are not recognized by the United States government. The fact that a certificate of conformity, executed by a Soviet official, was omitted and, instead, the acknowledgments were worded in an attempted compliance with New York law does not overcome the basic invalidity of the instruments. The powers of attorney were invalid from their inception and must be regarded as a nullity lest an act of this court be considered as implying recognition of the acts of a puppet government installed by an aggressor nation [cases cited] ”.
I am inclined however to the view that this difference is a valid distinction from the situation in the Luks case and brings the present case squarely within the dictum in Matter of Luberg. Indeed, I would .suppose that at least for present purposes, the law of the de facto government of occupied Lithuania, i.e. the law of the USSR, is the law of the place where the instrument was executed. It is well established that the law of a de facto government is for many purposes to be recognized as law by our courts. Perhaps the outstanding example of this principle is the holding in Salimoff & Co. v. Vacuum Oil Co. (262 N. Y. 220 [1933]) that an action for conversion of oil which had taken place in Russia could not be brought in the United States because under the law of Soviet Russia — which the United States did not recognize as the de jure government of Russia — no such action would lie in Russia. (See, also, Russian Reinsurance Co. v. Stoddard, 240 N. Y. 149, 163-164 [1925], supra; Upright v. Mercury Business Machines Co., 13 A D 2d 36, 41 [1st Dept., 1961].)
Basically, as Judge Lehman said in Russian Reinsurance Co. v. Stoddard (240 N. Y. 149, 163): “ The facts of each case, the result of each possible decision, determines whether that decision accords with common sense and justice.”
When we consider the facts of this ease and the results of the respective possible decisions, I think the determination that these powers of attorney are on their face valid accords with common sense and justice.
*197 The questions here involved are basically (a) whether these powers of attorney were executed by the named principals and (b) whether these named principals are the relatives of the decedent designated by him as legatees.
There are no officials of the Republic of Lithuania in Lithuania. To require these legatees to go before a notary of the de jure Republic of Lithuania to prove their signatures is to deny to them the right validly to execute powers of attorney at all. To require them to travel to some part of the USSR where the USSR is recognized by our government as the de jure government in order to execute powers of attorney is to require them to do a useless act and one which, in the light of the small participation they have in the estate, may mean that they would forfeit their interest rather than try to prove it. Furthermore, the issue being whether this power of attorney was in fact executed, there is neither more nor less reason to believe that these powers of attorney were executed, because they were executed in the occupied territory than there would be if they were executed in de jure territory of the USSR, as to which concededly no question could be raised.
Consideration of the purpose which the statutory requirement is intended to serve seems to me to confirm this conclusion. The provision that the acknowledgment may be taken in the manner prescribed either by the laws of the State of New York “ or by the laws of the country where the acknowledgment or proof is taken” is not an expression of the foreign policy of the United States. Neither is it a statement of a preference for Lithuanian law over Soviet law. The provision is really a permissive provision intended to make it possible for persons in areas where they cannot readily be expected to find available somebody who knows the New York requirements for acknowledgment or proof of signatures to make such acknowledgment or proof in the customary, readily available manner in which such proofs are taken in the area in which they find themselves. The customary readily available manner of taking acknowledgments or proofs of signatures is of course that prescribed by the de facto law rather than the de jure law, the law which in fact is in effect in that area and not that which our Government says ought to be in effect.
If failure to accept these powers of attorney means that these legatees could not designate their own agents, then they would be represented by the Lithuanian Consul, who is of course unable to communicate with them and who is a person ‘ whose continued authority rests rather upon necessity than *198 upon the will of the principal.” (Russian Reinsurance Co. v. Stoddard, supra, p. 165.)
One of the chief tasks that the agent acting under the power of attorney will have to perform will be to establish that these Lithuanian residents are the relatives of the decedent. It would appear self-evident that almost the last person in the world who would be able to communicate with the principals and to obtain appropriate evidence from the occupied territory of Lithuania would be the Lithuanian Consul, the representative of the Lithuanian government in exile.
Accordingly, I hold that these powers of attorney are valid on their face and, insofar as the motion seeks to strike the powers of attorney as invalid on their face, the motion is denied.
II.
BEQUEST FOB A HEARING AND FOR FURTHER AFFIDAVIT UNDER RULE XXIII.
The Attorney-General of the State points out that the affidavit by the agent pursuant to rule XXIII of this court does not comply with that rule. It would appear that the Attorney-General is correct on this point and accordingly the agent will be required to furnish an affidavit which does comply with rule XXIII giving information in terms not only of the knowledge of the American attorney in fact but also of their correspondent in the USSR. However, in view of the fact that their correspondent is “ Iniureolleguia ” “ a Soviet collective of lawyers presumably enjoying some official status as a department of the Russian Ministry of Justice ” (Matter of Luberg, 19 A D 2d 370, 373), through whom substantially all powers of attorney from residents of the USSR come, the affidavit to be furnished need not comply with paragraph (b) of subdivision 4 of rule XXIII, requiring information as to all powers of attorney procured through such person over the past two years.
The Attorney-General further requests pursuant to section 32-a of the Personal Property Law (now EPTL 13-2.3) that the Surrogate inquire into and determine the validity of the powers of attorney and set the matter down for a hearing at which these attorneys in fact should be required to produce all correspondence and other documents relating to their relationship with ‘ ‘ Iniureolleguia 5 ’ and with the donor of the power here in issue.
In Matter of Luberg (supra) the court said with respect to the suggestion that implication of duress, etc. be drawn from *199 the relationship of the parties with ‘‘ Iniurcolleguia.” li Drawing such implications goes directly contrary to the evidentiary rules as to the credit to be given acknowledgments of instruments by foreign officials (19 A D 2d 370, 373.)
It is quite probable that at this point nobody has any evidence of duress beyond the drawing of implications from the general situation. The amount of the legatees’ participation in the estate is so small that it may not be worth the while of the parties to attempt to get evidence to present upon a hearing. Accordingly, the court will not at this time fix a date for hearing. Instead, in order that the parties may have a framework within which they may apply for appropriate relief for the purpose of obtaining evidence for use upon a hearing, the court will direct a hearing on this issue, with no date now set and no date to be set unless one of the parties within a reasonable time requests the court to set a date for hearing.
III.
APPLICATION TO STRIKE APPEARANCE OP LITHUANIAN CONSUL
In their opposing papers, the attorneys in fact request that the Lithuanian Consul be barred from further participation in this proceeding.
In normal course, a Consul may act for his nationals only in the situation where these nationals have not designated their own representative. (See Matter of Zalewski, 292 N. Y. 332; Matter of Luberg, 19 A D 2d 370, 374, supra.)
But here too, we must be guided by the principle that juridical conceptions should not be ‘ ‘ carried to the limit of their logic, ’ ’ but should be subject to self-imposed limitations of common sense and fairness. (Sokoloff v. National City Bank, 239 N. Y. 158,165, supra.)
Other issues will arise in this case than those heretofore alluded to. In their memorandum, the Wolf Popper firm states: “ In cases in this court involving Lithuanian nationals, the court routinely deposits their distributive shares in the City Treasury. Since we have no intention at this time to request a hearing under § 269-a of the Surrogate’s Court Act in this case,* the appearance of the Lithuanian Consul should be stricken without any prejudice to any rights he may have in any future proceeding.”
*200 The Appellate Division in Matter of Luberg (19 A D 2d 370, 374) permitted the Estonian Consul to remain in the proceeding for the purpose of being heard with respect to any future application to withdraw the funds, and held that the Surrogate’s refusal to strike the Consul’s appearance was proper.
In the case at bar, there is an additional rather striking circumstance that points to the desirability of permitting the Lithuanian Consul to remain in the case as well as the Wolf Popper firm.
One of the tragic human consequences of forcible occupations is that they may cut across families and that a man who hates the occupying power may still have ties of love with persons subject to that power. That appears to be the situation in the case at bar. The testator made some small provision for his Lithuanian relatives. But he also directed that out of his estate, a prize be given “ for a well written book about the Bolsheviks and Nazis terroristic practices and Genocide in occupied Lithuania” and he directed that part of his estate be given to the Lithuanian Social Democrat party delegation in exile to be used “ for political action to liberate occupied Lithuania.” Questions of construction have arisen at least as to the book prize. (Incidentally it is the position of the Lithuanian Consul that this provision is void for indefiniteness.) It is not clear that the construction and implementation of these provisions in any way affect the rights of the Lithuanian legatees whom both the Wolf Popper firm and the Lithuanian Consul seek to represent. But insofar as the construction and implementation of these gifts for purposes which are obviously hostile to the Soviet occupation of Lithuania are concerned, it would be a caricature of justice to listen to the views of the attorneys in fact chosen through the agency of a government collective of lawyers in the USSR and not to listen to those of the Lithuanian Consul representing the Lithuanian government in exile.
Accordingly, the application to bar the Lithuanian Consul from further participation in this proceeding is denied.
Both the Wolf Popper firm and the Lithuanian Consul may participate in proceedings in this estate, to the extent that they wish to participate, (without the court, of course, in any way, at this time, making any determination as to who, if anybody, shall compensate them), and subject, as to the Wolf Popper firm, to any determination which may be made in the future at any hearing to be held in accordance with the direction in Part II of this opinion.

 In the circumstances, the unlikelihood that any benefit will accrue in the foreseeable future to the Lithuanian legatees, whom both the Wolf Popper firm and the Lithuanian Consul so ardently seek to represent, gives a certain air of unreality to the whole proceeding.