Michael A. Telesca, J.
A nondomiciliary alien who resides in Russia has petitioned this court, through her attorney in fact, for the appointment of an administrator of the estate of Mychajlo Kolodij, also known as Michael Kolodig, deceased, claiming to be the true wife of the deceased. This court is presented with questions that may have diplomatic implications. More importantly, however, this court must determine to what degree the laws of this State protect the rights and property of its citizens from divestiture by foreign nationals.
Decedent was born on April 17, 1920 in what was then the country of Western Ukraine. After spending two years in a German concentration camp, decedent emigrated to England, where on March 6, 1954, he married Maria Makuch, the respondent herein. Subsequently, two children were born to the Kolodig’s, and the family emigrated to the United States as stateless persons for permanent residence. Decedent and his wife purchased a home in 1960 at 820 Avenue D in Rochester, New York, as tenants by the entirety. Decedent died intestate on May 7, 1968, a resident of the City of Rochester in Monroe County. He was survived by his wife, Maria, and their two daughters. Decedent’s estate was not administered, and on September 30, 1968, decedent’s widow petitioned this court for an order excepting decedent’s estate from New York estate taxation pursuant to article 26 of the Tax Law. Other than the proceeds of certain insurance policies ($10,000) in which his wife and children were named beneficiaries, and the property jointly held with his wife ($12,987.84), decedent’s only asset was a 1963 car. A no-tax order was signed by this court on October 17, 1968. On October 9, 1968, however, this court had issued to decedent’s widow limited letters of administration for the sole purpose of defending a personal injury action which had been commenced against decedent. That lawsuit was eventually settled.
Three and a half years after decedent’s death, the attorney for decedent’s widow received a letter dated November 4, 1971, from another attorney which stated that the latter had received inquiries from one Ivanna Kolodij to the effect that she is the decedent’s widow. Russian bureaucracy was then set in motion to verify this assertion, resulting in the preparation of the following documents and their submission to this court. *948 The archives of the Bureau of Vital Statistics of the Ukrainian Soviet Socialist Republic issued a certificate of marriage on March 9, 1972 certifying that on February 5, 1942, Mikhail Onufrievich Kolidiy, purportedly decedent, and Ivanna Danilovna Boretskaya, purportedly petitioner, were married in the Village of Ostrovets, Ternopolskaya Province. By certificate dated April 13, 1972, the Director of the Archives certified that the certificate of marriage is a correct copy of the original authentic certificate and that by virtue of the laws of the USSR, is "considered to be indisputable proof of the occurrence of said acts of vital statistics”. By certificate dated April 27, 1972, the Chief of the Department of the Archives of the Bureau of Vital Statistics, Ministry of Justice, Ukrainian SSR, certified that the director is the custodian of the pertinent records, that he is familiar with his signature and the seal of the archives, and that the certificates are genuine and "official public documents which confirm the fact that said acts of vital statistics were registered”. Then, the Assistant Chief' of the Consular Administration of the Ministry of Foreign Affairs of the USSR certified on May 29, 1972 the authenticity of the signature of the director. This trail of documentary authentication of petitioner’s claim culminated in a certificate by the United States Consul at Moscow, dated September 13, 1972, to the effect that the signature and seal of the assistant chief are true and official, respectively, that he holds the position stated in his certificate, and that faith and credit are due his official acts. Further proof submitted in support of petitioner’s claim of being decedent’s widow is an affidavit by petitioner, sworn to on March 13, 1975, in which petitioner states that she resides in the Village of Ostrivets, Ternopolskaya Province, Ukranian SSR, that she married Kolodiy Mikhail Onufrievich in that village, that the marriage was the only one for both of them, and that it was never dissolved.
By power- of attorney dated January s18, 1972, petitioner appointed the New York City law firm of Wolf, Popper, Ross, Wolf & Jones as her attorney in fact for the purpose of representing her in all matters arising from the death of her alleged husband. The power of attorney is printed in the Russian and English languages in parallel columns. Her acknowledgment was taken by a notary public, and a notarial certificate was signed on January 31, 1972 by the Chief of the Notarial Department of the Ministry of Justice. The latter’s *949 signature was authenticated on March 18, 1972 by the Assistant Chief of the Consular Administration of the Ministry of Foreign Affairs; and the United States Consul in Moscow, on March 27, 1972, issued a certificate authenticating the signature and seal, and certifying that he was the Assistant Chief of the Consular Administration of the Ministry of Foreign Affairs of the USSR to whose official acts faith and credit are due. Pursuant to the power of attorney, the Wolf, Popper firm retained counsel to appear before this court.
By petition dated June 19, 1974, petitioner has requested this court to appoint the Public Administrator of Monroe County as administrator of decedent’s estate to determine the estate rights of the petitioner. Respondent opposes the application, contending that there is insufficient proof to rebut the presumption in favor of the validity of her marriage to decedent.
Respondent’s ground for attacking petitioner’s proof relates to the weight to be given the power of attorney, affidavit and other supporting documents. EPTL 13-2.3 entrusts the Surrogate with the power and duty to inquire into the true facts and surrounding circumstances as they may affect the validity of a power of attorney (Matter of Luks, 45 Misc 2d 72; Matter of Mitzkel, 36 Misc 2d 671). The purpose of this provision is "to curtail abuses that might arise between persons acting under a power of attorney and their principals” (Matter of Bargel, 5 Misc 2d 657, 659, affd 7 AD2d 645; see, also, Matter of Robinson, 52 Misc 2d 163, affd 30 AD2d 702). A concomitant purpose is to curtail abuses which might arise between the principal and agent, on one hand, and third persons whose rights they seek to affect. EPTL 13-2.3 (subd [a]) provides: "Every power of attorney relating to an interest in a decedent’s estate * * * which contains an express or implied authorization or delegation of power to act thereunder shall be acknowledged or proved in the manner prescribed by the laws of this state for the recording of a conveyance of real property”. Section 301 of the Real Property Law provides that an acknowledgment of a conveyance of real property may be made in a foreign country before a notary public, and section 301-a of the Real Property Law provides that the acknowledgment must be taken in the manner prescribed either by the laws of New York or by the laws of the country where the acknowledgment is taken.
Section 303 of the Real Property Law provides: "An ac *950 knowledgment must not be taken by any officer unless he knows or has satisfactory evidence, that the person making it is the person described in and who executed such instrument.” "The thing to be known is the identity of the person making the acknowledgment with the person described in the instrument and the person who executed the same. This knowledge must be possessed by the official * * * Unless, therefore, it follows that the person who asserts before the acknowledging officer that he has executed an instrument then present is necessarily the same person who has been described in it as a party thereto, this certificate of acknowledgment is defective * * * Even though there may be identity of name between the individual described and the individual who acknowledged that he executed, it does not follow that there is identity of person * * * It is not sufficient to certify that the person who appeared and made the acknowledgment was the person executing, without also certifying that he was the person described in said instrument” (Gross v Rowley, 147 App Div 529, 531-533). The power of attorney described Ivanna Kolodij as the wife of Kolodij Mikhail Onufrievich, also known as Michajlo Kolodij, also known as Mikhail Kolodiy, an assertion which obviously must be made to entitle the attorney in fact to petition the court in this matter. That the notary who took her acknowledgment could not certify that there was an identity of person between the person who appeared and signed the power of attorney and the person described in the power of attorney as the wife of the decedent is evident from a reading of the acknowledgment itself and the documents submitted to this court. The notary, in the acknowledgment, certifies that Ivanna Kolodij is "known to me as the person(s) indicated in said power of attorney.” It is obvious that the notary in no way was in a position to certify that Ivanna Kolodij is the wife of the decedent The acknowledgment was taken on January 18, 1972. Yet, the alleged marriage certificate was not certified until March 9, 1972, and Ivanna Kolodij’s affidavit to the effect that she is decedent’s wife was not sworn to until March 13, 1975. Thus, the notary had no information upon which to base his certification that there was "identity of person” except for the unsupported statement set forth in the power of attorney. Consequently, the acknowledgment is invalid, and so, therefore,-is the power of attorney as not being in compliance with the requirements of EPTL 13-2.3.
*951 Assuming arguendo that the power of attorney is sufficient to grant jurisdiction to this court, it does so solely for the purpose of adjudicating the issues presented in the petition and supporting documents, to wit: the actual existence of one Ivanna Kolodij and the veracity of her claim of being decedent’s first wife.
No witnesses were called by the petitioners to testify, and the only proof submitted on her behalf was her affidavit, a letter purportedly written to her by decedent, and the marriage certificate. In her affidavit, sworn to on March 13, 1975, petitioner stated that she married one Kolodiy Mikhail Onufrievich, purportedly the decedent, although there is no proof that the person named in the affidavit in fact is the decedent. Not unlike a conclusory assertion or allegation in any action or proceeding, it has no probative value. Moreover, this affidavit is clearly a hearsay statement not subject to cross-examination, and is submitted to establish the truth of the statements contained therein (Matter of Geiger; 28 Misc 2d 655; Poses v Travelers Ins. Co., Hartford, 245 App Div 304). Therefore, the affidavit is inadmissible. The letter purportedly written to petitioner by decedent is likewise inadmissible since petitioner has failed to establish its authenticity and genuineness (Material Men’s Mercantile Assn. v Material Men’s Credit Agency, 191 App Div 73). With regard to the marriage certificate, it may very well be that one Ivanna Danilovna Boretskaya did marry one Mikhail Onufrievich Kolodiy in the Ukraine on February 5, 1942. However, no proof has been submitted to this court to the effect that the petitioner and decedent are in fact those two persons. Absent such proof, the marriage certificate is of questionable relevancy since it does not tend to prove the fact of petitioner’s marriage to decedent (Matter of Dale, 159 Misc 578).
There are significant reasons for requiring a proper showing of the existence of Ivanna Kolodij and her status as decedent’s first wife. We must not let the welcomed spirit of detente dull our memories to the fact that the USSR is an oppressive Government which totally subjugates the rights of individuals to the State. One instrument of that Government is the "Iniurcolleguia”, "a body of Soviet lawyers in Moscow organized and constituted pursuant to statute under the jurisdiction and control of the U.S.S.R. Ministry of Justice, for the purpose of exclusive representation of Soviet nationals in foreign legal matters” (Matter of Mitzkel, 36 Misc 2d 671, *952 675). Iniurcolleguia has entered into a retainer agreement with the Wolf, Popper firm to investigate all matters referred to them by Iniurcolleguia concerning estates or assets of decedents in the United States in which "clients” of Iniurcolleguia may have an interest. It has been said that Soviet nationals are prohibited from acting in the United States except through Iniurcolleguia (Matter of Mitzkel, supra, pp 675-676, and authorities cited therein), which has been described as "an essential force in subjecting the common people of Russia to the dictator’s power” (Storey, Law and Lawyers in a Divided World, Wash U L Q, June, 1958, p 252). Given this totalitarian form of Government, SCPA 2218* requires a showing by an alien beneficiary that the benefit, use or control of the property will not be denied him (Matter of Kosek, 31 NY2d 475). While this question is not presently before this court, the form of Government in the USSR, the rationale for such a requirement, is illustrative of why this court has a substantial obligation not to permit residents of Russia to assert claims to estate assets in this State without the identity of the claimant having been established by a proper showing of the evidence.
Ivanna Kolodij’s claim that she in fact is decedent’s first wife was severely undermined by the testimony of Reverend Peter Lisowsky, a Ukrainian Catholic priest. When decedent emigrated to England, he lived for two years with Reverand Lisowsky. While Reverend Lisowsky did not know decedent in the Ukraine, he did know Maria Makach (the respondent herein), the woman decedent wanted to marry. Before Reverend Lisowsky would administer the marital rites, it was necessary that he satisfy himself that decedent was neither married nor divorced at that time. Decedent confessed to Reverend Lisowsky that he had never married, and brought to the priest two witnesses who had been in the concentration camp with decedent to verify this fact. Having satisfied himself that decedent never married, Reverend Lisowsky married decedent and Maria in accordance with the Catholic rite of the Ukrainian Church on March 6, 1954 in Coventry, England. The marriage certificate has been submitted to this court by respondent.
*953 Reverend Lisowsky further testified that the power of attorney is in the Russian language as is Ivanna Kolodij’s signature and that it is not customary for a Ukrainian to sign her name in that manner. When he lived in the Ukraine, the children were not taught Russian in school. Reverend Lisowsky also attacked the marriage certificate submitted by petitioner on the ground that in 1942, the Ukraine was occupied by Germany and all records were destroyed.
It is well established in New York that a presumption exists, in the absence of contrary evidence, in favor of the validity of the second of two marriages (Matter of Dugro, 261 App Div 236, affd 287 NY 595; Matter of Hadley, 57 Misc 2d 652, affd 32 AD2d 1078; EPTL 5-1.2). Respondent has established to the satisfaction of this court her marriage to decedent and that there are two children born of this marriage. Petitioner, on the other hand, has failed to overcome the presumptive validity of respondent’s marriage under any standard of proof. This being so, petitioner’s claim must fail.
Maria Kolodig, the decedent’s widow, is subject to the jurisdiction of this court, and therefore can be called to testify, made to substantiate her status, and can be cross-examined by petitioner’s attorney. Petitioner, on the other hand, would support her claim solely by means of documentary proof, and she is not subject to cross-examination by respondent’s attorney and, thus, is accorded preferential treatment. In the interests of justice and fair play, this court will not grant an application of this nature upon the proof submitted herein.
This court has an obligation to proceed with caution in matters of this nature. Respondent’s rights and interests have been vested in her for several years since her husband’s death. Petitioner is attempting to divest her of these rights and interests solely by use of documentary evidence which is neither proof that the man she married is the decedent, nor is such proof subject to close scrutiny or cross-examination. Are we to say that these rights are so insignificant that they must be sacrificed in the interests of international harmony and detente? Traditional notions of American fair play and justice supersede these concerns. Respondent, who was married to decedent for 14 years with no doubts regarding the validity of that marriage, is faced with a challenge to that marriage 7 years after her husband’s death. Respondent was not left with much in the way of material wealth upon her husband’s death, but what she does have is precious to her and is to be *954 guarded and protected to the full extent of the laws of this State. The marital home was owned in their joint names, and her expectancy was that if she survived decedent she would retain the home for herself and her two children. Were petitioner’s claim upheld, this expectancy would be destroyed, for her ownership in the marital home could then be held to be merely as a tenant in common with the decedent (see, e.g., Crawley v Shelby, 37 AD2d 673). Her expectancy, however, has been given statutory confirmation with the recent amendment to EPTL 6-2.2, which provides that a joint tenancy is created when two persons not legally married take real property as husband and wife (L 1975, ch 263, § 1). While this amendment cannot be applied retroactively, nevertheless the rationale for such a provision is persuasive.
Even assuming the power of attorney to be valid, this court finds that the petitioner’s claim that she is the first wife of the decedent and therefore entitled to share in his estate, fails for lack of proof. The presumption of validity of the marriage between the decedent and the respondent herein was not overcome by the petitioner’s proof. This court will not permit the divestiture of respondent’s rights and interests and the destruction of her expectations on the proof submitted herein.
Accordingly, the petition to appoint the Public Administrator to determine the estate rights of petitioner is denied.

 The constitutionality of SCPA 2218 was upheld in Matter of Leikind (22 NY 2d 346), wherein the court distinguished the New York statute from the Oregon statute which had been declared unconstitutional by the United States Supreme Court in Zschernig v Miller (389 US 429).