Boris Pranas DANIUNAS and Augustinas-Vitautas Augustinovich Morkunas, Plaintiffs,

v.

Anicetas SIMUTIS, Individually and as Consul General of the Republic of Lithuania at New York, Defendant.

No. 75 Civ. 1337 (RWS).

United States District Court, S. D. New York.

Oct. 18, 1978.

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiffs; Shirley P. Thau, New York City, of counsel.

Richard J. Tarrant, Teaneck, N. J., for defendant.

SWEET, District Judge.

■ This is a hard fought litigation over a fund presently held by the Consul General of Lithuania, duly appointed by the regime that was in authority prior to the annexation of Lithuania by the Union of Soviet Socialist Republics ("USSR"), an act which to date remains unrecognized by our Government. The fund results from the administration of the estate of John Daniunas, who died intestate in 1931 in Maryland. The sole heir of John Daniunas was Aniele Daniuniene, who died intestate in Lithuania. Certain of the monies of her estate were paid to Jonas Budrys ("Budrys"), Consul General of Lithuania and predecessor to the present defendant, who deposited these monies in a non-interest bearing account. Such monies, totalling $1,825.34, comprise the fund which is the subject of this action. The claimants to the fund, the plaintiffs, are Lithuanian residents who are represented by their attorney in fact pursuant to a power of attorney (*see* discussion *infra*). Jurisdiction of this court derives from 28 U.S.C. § 1351[1] and the principle that

> [F]ederal courts of equity have jurisdiction to entertain suits "in favor of creditors, legatees and heirs" and other claimants against a decedent's estate "to establish their claims" so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate . . . .

*Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946).

■ The defenses of Statute of Limitations and laches are not available to the defendant. The defendant has admitted that his capacity vis a vis the fund in question was that of a fiduciary. (Defendant's Memorandum of April 30, 1978 at 7). Thus, the period of limitations "does not begin to run until the administrator has openly repudiated his obligation to administer the estate. (citations omitted)." *In Re Estate of Barabash*, 31 N.Y.2d 76, 80, 334 N.Y.S.2d 890, 893, 286 N.E.2d 268, 270 (1972). The

letter dated September 6, 1968 cannot be considered an act of repudiation; there being no other alleged act of repudiation, the Statute of Limitations never commenced to run. *Id.* Similarly, absent repudiation, the defense of laches is also unavailable. *Id.* at 83, 334 N.Y.S.2d 890, 286 N.E.2d 268. Furthermore, defendant has asserted no prejudice due to the delay.

The defense that the defendant is immune from suit is no longer available. Such assertion was exhaustively dealt with, and denied, by the Honorable Henry F. Werker in his decision dated June 30, 1975. This decision is the law of this case and will not be disturbed.

■ This suit is being prosecuted on behalf of the plaintiffs pursuant to a power of attorney issued to the attorneys for the plaintiffs. Defendant has placed in issue this court's authority to recognize these powers of attorney and the validity thereof. In *Matter of Bielinis*, 55 Misc.2d 191, 284 N.Y.S.2d 819 (Sup.Ct.N.Y.C.1967), *aff'd*, 30 A.D.2d 778, 292 N.Y.S.2d 363 (1968), where the facts were strikingly similar to the case sub judice, the court recognized the powers of attorney. Even though the present government of Lithuania is not recognized by this country, since the powers of attorney relate to what has been determined to be solely a private, local and domestic matter, the inheritance rights of Lithuanian citizens, they will be given effect by the courts of this country. *Id.; Carl Zeiss Stiflung v. V. E. B. Carl Zeiss, Jena*, 293 F.Supp. 892, 900 (S.D.N.Y.1968), *modified on other grounds*, 433 F.2d 686 (2d Cir. 1970). Although defendant has also attacked the validity of the powers of attorney, he has not carried the burden of establishing that their execution was the product of duress or non-comprehension. Therefore, this court will give recognition to the powers of attorney in question.

The claimants to the fund have presented to this court, through their attorney in fact,

---

1. 28 U.S.C. § 1351 provides as follows:
   The district courts shall have original jurisdiction, exclusive of the courts of the States, of all actions and proceedings against consuls or vice consuls of foreign states.

in proper form, a duly authenticated Certificate of Right to Inherit ("Certificate of Right") issued by the present Lithuanian government, which in turn has been authenticated by the appropriate official of the USSR. This certificate provides that the sole heirs of Aniele Daniuniene are her son and grandson, the plaintiffs here. The claim of the plaintiffs is resisted by the defendant on the grounds that the Certificate of Right is not properly authenticated and that this court may not rely upon the act of an unrecognized sovereign.

■ A review of the documents submitted has satisfied this court that the Certificate of Right was properly authenticated in accordance with the laws of Lithuania. The authorities of the plaintiffs are persuasive as to the recognition to be given a private, as opposed to a political act of an unrecognized sovereign. *In Re Luberg's Estate*, 19 App.Div.2d 370, 243 N.Y.S.2d 747 (1st Dept. 1963); *see generally Upright v. Mercury Business Machines Co.*, 13 App. Div. 36, 213 N.Y.S.2d 417 (1st Dept. 1961). It is indeed the accepted principle that the law of the domicile of the decedent, that is, Lithuania, should be applied by this court. *See* 17B Est., Powers & Trusts § 3–5.1(b)(2) (McKinney); *In Re Rougeron's Estate*, 17 N.Y.2d 264, 270 N.Y.S.2d 578, 217 N.E.2d 639, *cert. denied*, 385 U.S. 899, 87 S.Ct. 204, 17 L.Ed.2d 131 (1966). However, to give recognition to the Certificate of Right as determinative of the rights of all the heirs to the decedent would approach, if not actually reach, a political act, since it would affect persons and property located in countries other than Lithuania. *See generally Zeiss Stiflung, supra* at 900–01. This court cannot deny the reality that Lithuania does not, nor can it feasibly, determine the rights of heirs residing outside its borders. Therefore, its recognition is limited to that which is a private act, that is, to the determination of the heirs residing in Lithuania, and it will not affect this court's ability to give recognition to those heirs residing outside of Lithuania who have satisfied this court as to the validity of their claim.

In this regard it should be noted that one Anna Walatkus, a resident of Baltimore, Maryland, has asserted that she is a daughter of Aniele Daniuniene and entitled to a one-quarter share of the fund. Such claim has been submitted by the defendant and, in letters by Mrs. Walatkus, addressed to the attention of this court. Although this court might be inclined to recognize this claim, there is no competent evidence on which such recognition could be based. The defendant did not seek to implead Mrs. Walatkus nor did he introduce any probative evidence to establish her claim. Therefore, this court is unable to find that she is entitled to participate in any distribution of the estate.

■ Sections 2218(1) and (2) of the Surrogate's Court Procedure Act provide as follows:

1. Where it shall appear that a beneficiary would not have the benefit or use or control of the money or other property due him or where other special circumstances make it desirable that such payment should be withheld the decree may direct that such money or property be paid into court for the benefit of the beneficiary or the person or persons who may thereafter appear entitled thereto. The money or property so paid into court shall be paid out only upon order of the court or pursuant to the order or judgment of a court of competent jurisdiction.

2. In any such proceeding where it is uncertain that an alien beneficiary or fiduciary not residing within the United States, the District of Columbia, the Commonwealth of Puerto Rico or a territory or possession of the United States would have the benefit or use or control of the money or property due him the burden of proving that the alien beneficiary will receive the benefit or use or control of the money or property due him shall be upon him or the person claiming from, through or under him.

The constitutionality of this statute has been upheld. *Bjarsch v. DiFalco*, 314 F.Supp. 127 (S.D.N.Y.1970). Since there is no applicable federal law, this court will

apply the law of its situs, New York.[2] This statute "requires a showing by an alien beneficiary that the benefit, use or control of the property will not be denied [plaintiffs]. (Citation omitted)." *Matter of Estate of Kolodij*, 85 Misc.2d 946, 380 N.Y.S.2d 610, 616 (Sur.Ct.Monroe Co.1976). At the conclusion of the trial day on June 21, 1978, this court directed that the issue of whether the plaintiffs will receive the benefit or use or control of the monies from the fund should be addressed when trial was resumed on August 28, 1978, since the defendant had placed this question in issue. Plaintiffs' counsel chose not to address the issue at trial, but did address it in its Additional Memorandum of Law. Annexed to this memorandum was an affidavit of the attorney who is the head of the Soviet law firm specializing in the interests of Soviet heirs in estates pending in other countries, a letter from the Department of State, and copies of certain regulations of "Vnesphosyltorg", the Soviet foreign trade organization. Although these exhibits arguably provide support for the position that the plaintiffs will receive the full use or benefit of the fund, such were not introduced into evidence at trial and cannot be considered by this court.

The authorities cited by counsel for the plaintiffs do support the proposition that citizens of the USSR, in general, receive use or benefit or control of monies distributed to them from foreign legacies. However, the attorney for the plaintiffs has submitted nothing to this court to establish that these particular plaintiffs will be able to control, use, or benefit from the monies in question. Even assuming this court could consider the letter from the Department of State, there has been no showing that these plaintiffs are so physically located, or otherwise capable of taking advantage of the monies, so as to make purchases through "Vnesphosyltorg".

Furthermore, in many of the cases cited by counsel, facts establishing that the actual legatees would receive use or control or benefit of the monies were presented to the court. In *Matter of Lauraitis*, (File No. 2004–1153) (Surrogates Ct.Kings Co.) two visits from the President and officers of Inyerkollegiya, the foreign branch of the Moscow lawyer's collegium which represents Soviet citizens abroad, satisfied the court that Soviet citizens did receive the use or benefit of the funds and that the plaintiffs therein would receive similar treatment. In *In Re Saniuk's Estate*, 40 Misc.2d 437, 243 N.Y.S.2d 47 (Surrogates Ct.Ulster Co.1963), aff'd, 21 App.Div.2d 922, 251 N.Y.S.2d 204 (3d Dept. 1964), the decision to release the monies was based upon various letters, including three from the petitioning distributees, establishing that the claimants would receive use or control or benefit from the monies. In *In Re Danilchenko's Will*, 64 Misc.2d 665, 315 N.Y.S.2d 153 (Surrogates Ct.Dutchess Co.1970), aff'd, 37 App.Div.2d 587, 323 N.Y.S.2d 150 (2d Dept. 1971), aff'd, 30 N.Y.2d 504, 329 N.Y.S.2d 820, 280 N.E.2d 650 (1972), the decision followed extensive inquiry into the matter, including a visit of a Russian-speaking person to the USSR, who testified at trial.

Whether or not these plaintiffs will receive the use or benefit or control of the monies is a question of fact, not of law. Even if the cases cited by counsel for the plaintiffs satisfied this court that Soviet citizens generally have in the past received the use or benefit or control of foreign monies distributed to them, counsel has submitted nothing to this court establishing the continuation of this practice or that it will be applied to these Lithuanian plaintiffs. Similarly, no probative evidence has been introduced on behalf of the defendant to demonstrate his capacity to represent the claimants or to assure this court that he can place the fund in the hands of the heirs of Lithuania.

Therefore, this action is dismissed. The fund in question is to be retained by this court, pursuant to Section 2218 of the New

---

2. This court will not apply the law of Lithuania. There has been no submission of such law to this court. Furthermore, to apply the law of Lithuania, an unrecognized regime, in this instance would effectively be a political act.

York Surrogates Court Act, for the benefit of all those who may hereafter appear entitled thereto.

The question of whether the monies should be retained with or without interest thereon must necessarily be addressed. Earlier in this litigation the plaintiff moved for summary judgment or, in the alternative, the payment by the defendant into this court of the amount in question, plus interest thereon. Judge Werker reserved decision on the application for summary judgment and granted the request to have the defendant pay the sum in question, with interest, into this court. Judge Werker's order cited no authority for the requirement of interest and, indeed, apparently was granted only to allay the asserted fear of the plaintiffs that, should they ultimately succeed herein, the fund would no longer be available. Plaintiffs' brief in support of the request to have the monies deposited with the court addressed only the defendant's acts which indicated that he could not reasonably be expected to comply with any ultimate order of this court, and contained no authority for the granting of interest. After ordering the payment of the fund, plus interest, into this court Judge Werker allowed the defendant to submit papers as to why the grant of interest was improper. Therefore, it would appear that the interest requirement was not determined to be the law of the case, but merely a procedural safeguard until a final determination could be made.

In order to gain control of the fund in question defendant's predecessor applied for and was granted a Treasury license. Such license provided that the fund was to be paid into the National City Bank of New York for credit to the blocked account of the Consulate General of Lithuania as Trustee, a checking account. Pursuant to this license the defendant had to deposit the fund in a non-interest-bearing account. However, defendant has made no showing as to any reason why such account could not have been interest-bearing. Under such circumstances he should be charged interest on the sum in question. *See In Re Sime-nowitz Estate*, 36 App.Div.2d 760, 319 N.Y. S.2d 575 (2d Dept. 1971); *In Re Doyle's Will*, 191 Misc. 860, 79 N.Y.S.2d 695 (Surrogates Ct.Kings Co.1948).

Plaintiffs' claims are dismissed. The monies in question should be deposited in this court, with interest thereon at the legal rate of interest for each year in question. Settle order on notice.

SO ORDERED.