Raymond C. Baratta, J.
Natalie Danilchenko died a resident of Dutchess County on September 18, 1967, leaving a last will and testament dated the 22nd day of September 1960. After providing for certain charitable bequests, the testatrix directed in paragraph fourth of her will that the residue be bequeathed equally to her surviving brother (or his issue) and her sister (or if she should predecease her to her brother, or his issue). Both the brother and sister survived and are presently living in the Union of Soviet Socialist Republics. The residuary legacies were made contingent upon a finding of the executor under article “ fifth ” of the will which provides as follows: “ fifth: If, at my death, it shall appear, to my Executor in its sole and uncontrolled judgment, that any legatee designated in Article fourth of this my Last Will and Testament would not, because of residence in a foreign country or state, have the benefit or use or control of the money or other property if distributed to him or her, I direct that he or she shall be deemed to have predeceased me, and I further direct that any share or portion of my estate, which shall not be effectively disposed of by the aforesaid Article fourth, shall be paid over in equal shares -to the organizations receiving the legacies provided by Article third hereof.
“ In the exercise of its judgment pursuant to this provision, any doubt shall be resolved by my Executor against any alien legatee not residing within the United States or its territories and the determination, in good faith, by my Executor of any question presented by this provision shall be conclusive and binding upon every legatee or other person interested in my estate. ’ ’
The Irving Trust Company of New York, New York is the named executor of this will. The executor has petitioned this court, “ that a decree be entered herein * * * confirming and approving petitioner’s judgment and determination that the legatees named in Article Fourth of decedent’s will, Flor Adrianovich Zotov and Daria Adrianova Zotova, a/lc/a Daria Zotova-Werner, who are residents of the Union of Soviet Socialist Republics, as of the date of decedent’s death, do have benefit, use and control of their legacies; that the same are indefeasibly vested in them and that, subject to the settlement of its final account, petitioner be directed to pay over the distributable balance of decedent’s residuary estate to them.”
The domestic charities named as contingent beneficiaries in article third of the decedent’s will and the Attorney-General acting in their behalf have, in various alternative defenses, denied that the residuary legatees would have the benefit, use *667 and control of their funds and have further asserted that the petitioner has failed. to comply with the test created by the decedent in her will, in that the petitioner had not exercised its discretion free from any doubt.
This matter has been the subject .of considerable litigation. Petitioner moved for summary judgment in connection with its determination that the alien legatees would in fact have the benefit, use and control of their funds. The domestic charities cross-moved for summary judgment. Both motions were denied by decision of this court dated March 13, 1969. The matter was set down for a hearing which was conducted by the court on October 9 and October 10, 1969 and January 22 and January 23, 1970.
In its decision denying the executor’s motion for summary judgment the court concluded that its function in this case is to review the discretionary acts of the executor, not to substitute its own judgment for that of .the fiduciary. It held further that testimony should be taken on the issue of whether the executor abused its discretion in determining that the alien legatees would have the use, benefit or control of their legacies.
Prior to the decision of the Supreme Court of the United States in Zschernig v. Miller (389 U. S. 429), the Surrogates of this State and others conducted hearings on the issue of use, benefit and control. These hearings were required by various statutes which prohibited the transmittal of money to aliens who were prevented from exercising the use, benefit and control of said funds. In New York State such a statute existed. The present statute, SOPA 2218, has recently been interpreted by the Court of Appeals in Matter of Leikind (22 N Y 2d 346, 351-352) as prohibiting the Surrogate from more than a “routine reading” of the foreign laws in determining this issue. In addition, since the death of the decedent, Russia has been removed from the Treasury list (Code of Fed. Reg., tit. 31, § 211.2, subd. [a], as amd.), and other courts of this State have ruled in favor of alien legatees residing in Russia. (Matter of Seemel, N. Y. L. J., Oct. 3, 1969, p. 18, col. 7; Matter of Popko, N. Y. L. J., Aug. 4,1969, p. 10, col. 6.)
Notwithstanding the limitations upon judicial inquiry as set forth in the Leikind and Zschernig cases (supra), it must be noted that in this case the will established an independent test which must be acted upon by the executor. Where the will sets forth a specific test on the question of use or benefit or control, it is the opinion of the court that the Zschernig and Leikind decisions do not prohibit a full hearing on this issue. (See Matter of Hirschberg, 203 Misc. 18.)
*668 The domestic charities argue that the will speaks at the time ■of the death of testatrix. To that extent the court agrees with the respondents. Petitioner is not permitted under the terms of the will to wait until a favorable change of laws occurred as to the alien legatees. On the contrary, the will demonstrated an intent that as soon after the decedent’s death as possible, the executor make its determination so that either the alien legatees or the domestic charities would receive the legacy promptly.
The domestic charities and the Attorney-General seek to expand this test to a requirement that the executor had to make an immediate ruling. The charities would argue that the executor made its initial ruling in the original petition dated October 16, 1967, and thereafter was forever barred from exercising its determination. The court cannot accept this contention. Such a requirement would relegate the executor to a purely administrative judgment without the benefit of an investigation, would place an unreasonable burden upon it and could defeat the testamentary scheme of decedent. The executor was entitled to make an intelligent and reasonable investigation into the facts prior to rendering a final determination. The executor would be entitled to a reasonable time in which to conduct such an investigation. Considering the difficult question that confronted this fiduciary, the court cannot find that the time utilized by the executor was unreasonable.
The will also provided that in exercising its . judgment “ any doubt shall be resolved by my executor against any alien legatee ”. The charities claim that “any doubt” must be interpreted literally and that any evidence of doubt requires a finding by the executor against the alien legatees. However, the charities did not support this contention with legal precedent. Black’s Law Dictionary defines doubt as “ Uncertainty of mind; the absence of a settled opinion or conviction; the attitude of mind toward the acceptance of or belief in a proposition, theory, or statement, in which the judgment is not at rest but inclines alternately to either side ”.
The charities argme that since the executor changed its mind in its determination, there is clearly evidence of doubt. This argument, however, is not borne out by the facts. There is nothing in the record to indicate that the executor is presently inclined to view this question with doubt. On the contrary, the executor now maintains a settled opinion and conviction and it is the executor’s attitude of mind and not the courts which is important.
Having established its position free from doubt, the court’s function is to determine whether such a position is tenable *669 and not an abuse of discretion. As any prudent fiduciary would do, petitioner proceeded to investigate the issue of benefit, use and control. Petitioner appointed a qualified employee, Mr. Torbert, to conduct the investigation of the primary issue created by the will. Inasmuch as the petitioner was a corporate fiduciary, one would expect that Mr. Torbert’s recommendations were still subject to the control of an overriding authority. The executor also employed a qualified expert, Professor Berman, to investigate the question and report his findings to it. It was a proper exercise of its duty for the fiduciary to utilize the services of qualified employees and an independent expert in making its determination under the will.
In denying the petitioner’s motion for summary judgment, the court pointed out that its function was to review the acts of the executor and not to substitute its own judgment for that of the fiduciary. The court required the executor to prove that it had not abused its discretion in making a determination in favor of the alien legatees. The court finds that the executor acted conscientiously. It performed an extensive study to ascertain the facts and the law applicable to the issue before it. The testimony of Professor Berman and Mr. Torbert, uncontradieted, was sufficient to sustain a determination by the executor that the alien legatees would receive the benefit or use or control of their legacies. Although, Professor Berman is accused of being partial by the charities, his testimony revealed that he approached this particular matter with an open mind and even traveled to Russia to make a further investigation into the facts, due to the large consideration involved. His conclusions were not contradicted or disproved either before the executor or before this court. Even if the charities were correct in their contentions that the petitioner did not give them an adequate opportunity to present their case before a determination was made, the charities have not refuted the evidence adduced at this hearing by the petitioner. Further, the exercise of its judgment in favor of the alien legatees is supported by decisions of the 'Surrogates throughout the State, who have found that the Soviet citizens do receive the benefit or use or control of estate funds which are transmitted to them as of the date of the decedent’s death. (Matter of Podworski, 53 Misc 2d 1043; Matter of Popko, supra; Matter of Seemel, supra; Matter of Saniuk, 21 A D 2d 922.)
Having exercised its judgment without doubt and based upon a reasonable and intelligent investigation into the law and facts, petitioner’s determination must be accepted unless the charities can demonstrate that it failed to carry out the instructions of *670 the will in good faith and abused its discretion. (Moncel Realty Corp. v. Whitestone Farms, 188 Misc. 431.) This the charities have failed to do.
The court therefore confirms and approves the judgment and determination of the executor that the alien legatees named in article fourth of the decedent’s will, will have the benefit, use and control of their legacies and that the same are indefensibly vested in them, and that subject to the settlement of its final account, petitioner be directed to pay over the distributable balance of decedent’s residuary estate to the alien legatees.
Upon all the evidence offered, this court further finds that the distributees will receive the benefit, use and control of their shares within the meaning of SOPA 2218. The court will require receipts from such beneficiaries to be filed direct by mail or through the attorneys in fact in this court. Based on experience the court requires that such moneys be transmitted through designated banking channels, consular offices', or other means which experience demonstrates have proven to be effective. (Matter of Popko, supra.)