498 So.2d 1303 (1986)
Dora Moesevina GOLDENTRESTER and Arcadia Shapiro E., Appellants,
v.
Melvin J. RICHARD and Elizabeth Hershfield, As Personal Representatives and As Trustees of the Estate of Raymond Goldin, Deceased, Appellees.
No. 85-354.
District Court of Appeal of Florida, Third District.
November 18, 1986.
Rehearing Denied January 13, 1987.
Bernstein, Hodsdon, Tannen & Korn and Harold Tannen, Miami, for appellants.
*1304 Richard & Richard and Melvin J. Richard, Miami, for appellees.
Before NESBITT, DANIEL S. PEARSON and FERGUSON, JJ.
FERGUSON, Judge.
Appellants, primary beneficiaries under a will, bring this appeal from an order which vacates a prior order of distribution and orders the Personal Representatives to distribute estate assets to an "alternative beneficiary" on a holding that distribution to the primary beneficiaries is impossible. We reverse.
We specifically address two issues: (1) whether the exercise of the discretion given to trustees under a will to determine if a bequest is possible or practical is beyond review by the probate court; and (2) whether a testamentary trust which makes a semi-annual award of income to the beneficiaries in an amount which is less than the total income without fixing a termination date, and which awards all of the residual estate to the same beneficiaries, should fail as a trust and the assets awarded to the beneficiaries.
The will of the decedent, Raymond Goldin, makes certain specific bequests to various individuals and charities. Appellants, the beneficiaries, who reside in the Soviet Union, are the niece and grandnephew of the decedent. By article three of the will, they, as the first named beneficiaries, are bequeathed $5,000 each. By article five of the will, appellants are also the sole named beneficiaries of the residual estate subject to the conditions that (1) the distribution be made by semi-annual payments of $500 to each appellant, and (2) the personal representatives, as trustees, may refrain from making the distribution on a determination by them that such distribution is "impossible or impractical" or that the distribution is "unlikely to reach or benefit" the appellants.
In addressing the first question, directed to the court's power to review the trustees' exercise of discretion, we hold that while the trustees were given complete discretion to determine whether the bequest to the primary beneficiaries was possible or practical, that discretion was bridled by the court's duty to insure that the testator's intent was not defeated.
Factually similar is In Re Estate of Ciri, 128 N.J. Super. 129, 319 A.2d 251 (App.Div. 1974). There, the will of Basil Ciri named his brother and two sisters, residents of Albania, as residuary legatees. The will provided that since it was possible that restrictions on property rights by the government of Albania might prevent free enjoyment of the bequests, the executor and other named individuals were to constitute a committee to decide in their "complete discretion" when and in what amounts the principal and income were to be distributed.
The trial court in Ciri, relying in part upon a New Jersey statute which authorized that a legacy be deposited into the court registry where it appears that the beneficiary will not have the benefit or use or control of money or property, denied the application of the residuary legatees to compel payment of their distributive shares.
The appellate court reversed, holding that (1) while the trustees had complete discretion to decide whether the beneficiaries would freely enjoy the bequest, that discretion had to be related to the purpose of the will, and (2) the trial court was wrong in its conclusion that a limited availability and range of consumer goods in Albania is such an impediment to the beneficiaries as to constitute a denial of free enjoyment of the trust corpus.
Whether the bequest to the beneficiaries in this case is capable of consummation in accordance with the testator's intent is a question of fact. See Zschernig v. Miller, 389 U.S. 429, 88 S.Ct. 664, 19 L.Ed.2d 683 (1968) (Harlan, J., concurring). The evidence considered by the trial court, without objection, included letters from the Department of State, an affidavit of a recognized expert on Soviet law, an affidavit of an attorney who has been involved in many cases where bequests were made to Soviet *1305 citizens, and the affidavits of the appellants.
The November 16, 1983, letter from a Consular Affairs Officer in the State Department concludes that:
On the basis of the foregoing, the Department of State is of the opinion that there is a reasonable assurance that Soviet and Baltic State beneficiaries of American estates will receive their inheritance proceeds and be able to negotiate them for full official value.
The opinion of Harold J. Berman, Professor of Law at Harvard School of Law, a proclaimed expert in Soviet law,[1] stated in paragraph six of his six page affidavit:
The laws of the USSR place no restrictions on the rights of a Soviet citizen to inherit property from a foreign decedent... .
* * * * * *
In this connection it should be added that Soviet law provides for liberal rights of inheritance of those kinds of property which are subject to personal (as contrasted with state or public) ownership.
John Fisher, a partner in the law firm representing the appellants, gave the following statements by affidavit:
I know from extensive experience that Soviet legatees or distributees of estates in the United States can and regularly do receive their inheritances through funds transmitted by my firm acting as attorneys-in-fact for such legatees and distributees, since we obtain receipts signed by our clients in all cases. No complaint of nonreceipt has been made. I have personally spoken to clients in the Soviet Union who received or are to receive inheritances and I have confirmed with them the prices they pay for merchandise and the availability of goods to them.
An affidavit executed by both appellants is also part of the record which was before the trial court. It states in part:
We wish to receive the estate due us in monies. With the monies received, we shall personally, at our own discretion, be managing the same and shall have great advantage and benefit therefrom.
Also part of the record is a letter from the Soviet beneficiaries to the attorney for the Personal Representatives in response to the specific concern:
We have received your letters and notifications. We were very moved by your concern about our interests in the matter of obtaining the estate of our deceased relative  Raymond GOLDIN.
* * * * * *
In regard to your fear that we would not get the benefit and advantage from our shares in the estate, we can reply to you that your concern is groundless.
Appellees, the Personal Representatives/trustees, respond that there was no timely showing based on competent evidence that they abused their discretion. They argue that the affidavits of Professor Berman and Attorney Fisher are self-serving. (Professor Berman, in his affidavit, denies that his opinions are offered other than as an independent expert.) A "Report And Judgment Decision of Fiduciaries" prepared by Attorney Melvin Richard as Co-Personal Representative and Trustee, concludes, based on his own investigation, that:
1. No United States Federal agency ... has been able to get any information as to whether any testamentary beneficiaries in the Soviet Union ever get any devise left to them in an estate in the United States.
* * * * * *
3. There is no way to determine whether the photocopy signatures of reported Soviet beneficiaries on "receipts" are genuine... .

*1306 4. Professor Berman could have gotten very little factual information from Soviet beneficiaries... . [I]t is probable that if the Professor did talk to beneficiaries, he was surely accompanied by members of Inyurkollegia [an official arm of Soviet government composed of lawyers] and/or a Soviet government "guide."
The substance of affidavits filed by appellees is that bequests to Soviet citizens are substantially diminished by attorney fees, the exchange rate, and issuance of "coupons" instead of rubles, which can be redeemed only at certain government stores. The evidence that Soviet beneficiaries do not receive the bequests at all, being based on unsworn letters, anonymous complaints, or verbal statements to the fiduciaries, fails the test for competency.
Considering only the competent evidence, the question presented is whether the bequest to the Soviet beneficiaries is rendered impossible or impractical owing to the likelihood that the bequest will be reduced by as much as forty percent to pay attorney fees, by an unfavorable international currency exchange rate, and by the fact that the beneficiaries will be able to purchase only at government-controlled stores where the range of consumer goods is limited. The showing made by the trustees, that the value of the bequest will be diminished by the time it reaches the beneficiary, falls far short of the required proof that the bequest will be confiscated in whole or part.
The trustees' determination, that the gift to the Soviet beneficiaries is impossible or impractical, unjustifiably frustrates the testator's intent. We hold that the discretion given the trustees has been abused and that the gift to the foreign beneficiaries should be paid. For cases reaching the same result see Saniuk's Estate v. Lefkowitz, 21 A.D.2d 922, 251 N.Y.S.2d 204 (App. Div.) (distributee, citizens of the Soviet Union, should have estates paid over to their attorneys in fact because evidence was that they would have beneficial use or control of the money), appeal denied, 15 N.Y.2d 482, 203 N.E.2d 801, 255 N.Y.S.2d 1026 (1964); In Re Will of Danilchenko, 64 Misc.2d 665, 315 N.Y.S.2d 153 (Sur.Ct. 1970) (same), aff'd 37 A.D.2d 587, 323 N.Y.S.2d 150 (App.Div. 1971).
In the second point appellants claim that the income beneficiaries are entitled to the entire trust assets because no provision is made for disposition of the principal. The will provides:
Fifth: All the rest, residue and remainder of my Estate ... are devised as follows:
A. One-half (1/2) to my niece, DORA MOESEVINA GOLDENTRESTER ...
B. One-half (1/2) to my grandnephew, ARCADIA SHAPIRO ...
The said devises shall be distributed to the named devisees by my Personal Representatives and by my Trustees, named herein, in the following manner:
A. Distribution shall not be made directly to the beneficiaries named therein but instead shall be made to my Trustees named herein, to same hold in trust. My Trustees shall make provision for the income and, if need be, the corpus of the said trust funds, to be distributed to each of the said beneficiaries at the rate of FIVE HUNDRED DOLLARS ($500.00) semi-annually... .
The fifth paragraph, set out above, expresses a clear intent by the testator to give appellants all of the residue of his estate. By the trust terms, however, it appears that the gift of the principal could be delayed indefinitely by semi-annual $500 payments, which in all probability will always be less than the income. That probability, that the corpus will never be invaded, does not negate the otherwise clear intent of the testator to give all the remainder of the estate to his niece and grand-nephew.
The failure to expressly make a final disposition of the property not disposed of by the semi-annual payments does not necessarily make the trust invalid.

*1307 If by the terms of a trust a beneficiary is entitled to the income from the trust property perpetually and there is no other disposition of the beneficial interest, the beneficiary is the sole beneficiary of the trust; if the trust is a trust of land he has an equitable interest in fee simple, and if it is a trust of personalty he has an absolute equitable interest.
Restatement (Second) of Trusts, § 128 comment b (1959). However, it is the intent of the testator which controls. It has been held in some cases "that the settlor had manifested an intention to give the beneficiary only a life interest, although there was no gift over of the principal on his death." Restatement (Second) of Trusts, Appendix, § 128 comment b (1959). There is no finding of such intent. The beneficiaries' argument that the trust automatically fails because it makes no disposition of the principal is, therefore, without merit.
The proper procedure for the beneficiaries to follow is to compel the termination of the trust.
The beneficiaries of a trust, if all consent and none is under an incapacity, can compel its termination if the continuance of the trust is not necessary to carry out a material purpose of the trust, although the period fixed by the terms of the trust for its duration has not expired.
Restatement (Second) of Trusts, § 337 comment a (1959). See also A. Scott, 4 The Law of Trusts, § 337 (1967); D. Lowell & J. Grimsley, Florida Law of Trusts, § 12-5 (3d ed. 1984).
Having decided that the gift to appellants was impossible or impractical, it was unnecessary for the trial court to decide whether the trust should be terminated. In light of our determination that there is no impediment to effectuating the gift to the beneficiaries, the trial court, on remand, will have to decide whether the trust should continue. In that determination equitable principles will apply. To guide the trial court we make two observations: (1) the testator did not contemplate a spendthrift trust; and (2) the fact that the trust will benefit the trustees is not a valid basis for its continuation. White v. Bourne, 151 Fla. 12, 9 So.2d 170 (1942).
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Professor Berman is the author of a treatise wherein he opines that American courts have demonstrated a political bias when dealing with claims of Soviet nationals to American estates. Berman, Soviet Heirs In American Courts, 62 Columbia L.Rev. 257 (1962). For the same point of view see Ginsburgs, Inheritance by Foreigners Under Soviet Law, 51 Iowa L.Rev. 16 (1965).